Argued and submitted May 25, 2004, at Portland Jewish Academy, Portland, affirmed March 16, 2005

## STATE OF OREGON,
*Appellant,*

*v.*

## BRENDA LEA CULLEY,
aka Brenda Lee Culley,
*Respondent.*

## STATE OF OREGON,
*Appellant,*

*v.*

## ROBERT GORDON CULLEY,
*Respondent.*

02CR0252 and 02CR0317; A119007

108 P3d 1179

Douglas F. Zier, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Anne Fujita Munsey, Deputy Public Defender, argued the cause for respondents. With her on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Haselton, Presiding Judge, and Linder, Judge, and Deits, Judge pro tempore.

LINDER, J.

## LINDER, J.

In these consolidated criminal cases, defendants are charged with multiple offenses as a result of evidence obtained during a warranted search of their residence.[1] The trial court granted defendants' pretrial motion to suppress, concluding that the warrant authorizing the search was not supported by probable cause. The state appeals, and we affirm.

The pertinent facts are those in the affidavit in support of the search warrant. In the affidavit, a Brookings police detective asserted the existence of probable cause to believe that defendants Robert and Brenda Culley—who are husband and wife—were involved with a third person, John Reece, in a conspiracy to manufacture, distribute, and possess methamphetamine, heroin, and marijuana. The affiant further asserted probable cause to believe that evidence of the drug activities could be found at defendants' residence, which was identified as 16009 Hannan Lane.

In support of probable cause, the detective recited information obtained from confidential and anonymous hearsay sources over the previous year. In particular, approximately nine months before the date of the affidavit, a confidential reliable informant told police that defendant Robert Culley had obtained marijuana and possibly heroin from California. About two months before the date of the affidavit, police also obtained information from an unnamed concerned citizen who had overdosed on drugs. That person said that he or she had obtained heroin from defendant Robert Culley at defendants' residence. Also, "during the past several months," unnamed concerned citizens living in the apartment complex where defendants had been residing reported to police that a number of visitors had gone to defendants' apartment and stayed only a short time. At least twice during that period, those citizens observed people with firearms go into defendants' apartment. They also recorded the license plate numbers of visitors, and a police check of motor vehicle

---

[1] The charges include manufacture, delivery, and possession of a Schedule I substance, marijuana (ORS 475.992), first-degree child neglect (ORS 163.547), and endangering the welfare of a minor (ORS 163.575).

records for those licenses revealed that at least some of the vehicles belonged to "drug users and dealers." The citizens also told police that, on "several occasions," they saw minors go into defendants' apartment and stay only a brief time.

The detective also recited information from a named informant about observations of drug activity made close in time to when the affidavit was prepared. Specifically, two days before the date of the affidavit, the affiant was contacted by other police officers and directed to contact Anita Martin "in reference to drug information." As recited in the affidavit,

"[Martin] stated that she has known Robert and Brenda Culley for some time and that her boyfriend is John Reece. [Martin] stated that she was at the Culley residence earlier today (02-26-02) and saw a large amount of marijuana and cash. [Martin] stated that Robert, Brenda and John are selling marijuana from the residence on Hannan Lane, and that she has seen Robert sell marijuana to several minor children in her presence, just in the past few days. [Martin] also stated that they have OxyContin on a regular basis. I know that person[s] that use heroin will use OxyContin when no heroin is available.

"[Martin] stated that they travel to California and purchase the marijuana. [Martin] stated that the marijuana that she saw today was packaged in quarters, eighths and sixteenths. [Martin] stated that the marijuana and cash was in a black bag above the microwave. [Martin] also stated that they keep marijuana below the sink. [Martin] stated that Robert prefers to use heroin, but she has not seen any heroin but has seen methamphetamine and OxyContin in the residence. I asked [Martin] when Robert and Brenda Culley moved from the Azalea Reach Apartments. [Martin] stated that they moved into the residence on Hannan last Sunday 02-24-02. [Martin] stated that Robert and Brenda have at least three small children living at home."

The affiant then explained that he "made contact with the Azalea Reach Apartments, and was advised that Robert and Brenda moved out on 02-22-02." The affiant did not recite any attempt by police to verify that defendants had moved to a residence on Hannan Lane or to observe activities around that residence.

Relying on the affidavit, a magistrate issued a warrant to search defendants' residence, which was identified as 16009 Hannan Lane.[2] As a result of evidence and statements obtained during the search of the residence, defendants were indicted for the crimes of which they now stand charged.

Before trial, defendants moved to controvert the affidavit and to suppress all evidence that resulted from the search of the residence. After an evidentiary hearing, the trial court rejected defendants' challenges to the accuracy and truthfulness of the information recited in the affidavit. The trial court agreed with defendants, however, that the affidavit omitted material information. In particular, the trial court found:

> "*Omitted* from the affidavit were other facts which, if known to the issuing judge, could have made a difference in determining the sufficiency of the affidavit: the fact that Anita Martin was under the influence [of alcohol] at the time of the interview AND that she had not voluntarily contacted the police (which was the inference from the affidavit). The named informant had been contacted by police as a result of a report of possible domestic violence. She told police that she had had an argument with her boy friend, John Reece, and he was gone by the time the police arrived."

(Emphases in original.) Thus, the trial court determined that the affidavit omitted two material facts: (1) that Martin was under the influence of alcohol when police interviewed her; and (2) that police contacted her to investigate possible domestic violence against her by John Reece, rather than because Martin wanted to initiate a report to police about defendants' and Reece's drug activities.

The trial court concluded that those omissions were significant in assessing probable cause, because they detracted from Martin's reliability:

> "[Martin therefore] was *not* a citizen-informant who might arguably not be needed to be shown as reliable or credible. Since she did not initiate the conversation, she would not be

---

[2] The warrant also authorized police to search the outbuildings, curtilage, any persons present, and all vehicles owned by, or under the control of, defendants and John Reece.

subject to prosecution for initiating [a] false report. She did not admit to any use of controlled substances, so her statements were not against her penal interest. She possibl[y] had motives to falsify her report."

(Emphasis in original.) The trial court therefore examined the extent to which police corroborated the information that Martin gave them:

"The only corroboration that police sought of the information provided by Ms. Martin, according to the affidavit, was determining that the defendants had moved from their former residence; there was no independent corroboration of the information provided by Ms. Martin that they had moved to Hannan Lane; there was no information in the affidavit about any attempt by the police to watch the new alleged residence for suspicious activity or to verify that defendants had moved there."

In assessing the affidavit as a whole, the trial court observed that Martin was the "critical link" between the older—and stale—information of past drug activity at defendants' former residence and the recent observations of drug activity at the Hannan Lane residence.[3] But, as the above portions of the trial court's opinion reveal, the trial court further concluded that Martin's status as a named informant did not make her inherently reliable considering the information omitted from the affidavit—namely, that Martin was intoxicated and that police interviewed her in the context of an investigation of domestic violence involving Reece, rather than because she wanted to report defendants' and Reece's alleged drug activities. In the trial court's view, police therefore needed to corroborate Martin's information to establish its reliability and they did not do so adequately. Considering the "totality of the circumstances" related in the affidavit, the trial court concluded that the affidavit was not sufficient to provide probable cause for the search warrant, and it granted defendants' motion to suppress.

---

[3] The state did not dispute that the older information was too stale, standing alone, to provide probable cause for the search. Nor does the state dispute that fact on appeal.

On appeal, the parties largely renew the arguments that they made below. The state asserts that the facts omitted from the affidavit did not significantly detract from Martin's reliability and that the trial court demanded too much of police in the form of corroboration. In particular, the state argues that Martin's intoxication did not impair her ability to communicate or render her a "liar" and that she provided detailed information to police despite her intoxication. The state also asserts that, although Martin did not "initiate" a report of defendants' and Reece's drug activities, she voluntarily provided that information to police, under circumstances that do not suggest that she had ulterior motives. In response, defendants urge that Martin's intoxication was a basis for questioning her judgment and the accuracy of her information. Moreover, according to defendants, the facts that Martin was in a dispute with Reece and that she did not initiate contact with police to report drug activities means that she was something other than a named "disinterested citizen" who could be deemed inherently reliable. Under those circumstances, defendants urge, more police corroboration of Martin's information was needed.

Before examining whether the affidavit established probable cause for the search, we begin with a threshold question raised by the state. The state contends that the trial court, in testing the affidavit for probable cause, scrutinized the affidavit using a wrong standard. According to the state, once the trial court determined that the warrant was inaccurate because of the omitted information, the trial court subjected the affidavit to a more searching and rigorous examination than was legally appropriate.

■   In its written opinion, the trial court stated that, "[w]henever there are inaccuracies in an affidavit, a magistrate should look even more closely at all the statements made in the affidavit." After making that statement, the trial court went through the affidavit, analyzing the information in the affidavit in light of the information that it omitted. *See* *State v. Wilson*, 178 Or App 163, 167, 35 P3d 1111 (2001) (when an affidavit omits material information, the court is to determine whether the omitted facts weaken the force of the facts recited or the inferences that would otherwise be

reasonable to draw). The trial court then tested the information in the affidavit in its totality to determine whether it established probable cause to believe that the objects of the search would be found in the place to be searched.

■ In doing so, the trial court appropriately reviewed the affidavit. When, as here, an affidavit has been successfully controverted, the suppression court resolves the sufficiency of the affidavit to establish probable cause for the warrant independently of the decision of the magistrate who issued the warrant. *State v. Harp*, 299 Or 1, 9-10, 697 P2d 548 (1985). As a result, contrary to the state's position, there is "no occasion for deference to the issuing magistrate's decision" because the magistrate's decision was "itself the product of faulty information." *Id.* at 10. In other words, the traditional deference given to the issuing magistrate as a way of resolving doubtful or marginal cases in favor of warranted searches drops from the analysis; the "suppression court" instead tests the affidavit anew. The trial court did no more than that in this case.

That leaves, then, the issue whether the facts and circumstances shown by the affidavit established probable cause to believe that "the search would discover things specified in the affidavit in the places requested to be searched." *State v. Villagran*, 294 Or 404, 408, 657 P2d 1223 (1983). In that regard, the parties debate the effect of the omitted information on Martin's reliability—*i.e.*, the fact that she was intoxicated and disclosed information about defendants' and Reece's drug activities when police responded to a report of domestic violence by Reece against Martin. As earlier described, the state argues that no further police corroboration of Martin's information was required to establish her reliability; defendants argue the converse. *See generally State v. Pelster/Boyer*, 172 Or App 596, 601-02, 21 P3d 106, *rev den*, 332 Or 632 (2001) (reliability of a named informant is evaluated based on the totality of the circumstances disclosed by the affidavit pertaining to both the informant and the information).

■ In challenging the trial court's conclusion that some corroboration of Martin's information was required, the state argues that Martin's level of intoxication was minimal and

that she was not significantly impaired when she talked to police. The state's argument, however, disregards our standard of review. The trial court's factual findings are binding on appeal as long as there is evidence to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We therefore review the record, and all inferences it will support, in the light most favorable to the trial court's express findings and to those that are implicit in the trial court's ruling. *See id.* Although the officers involved in Martin's questioning had differing perceptions of whether and to what extent Martin was intoxicated, at least one of the officers described her as sufficiently intoxicated that he would not have allowed her to drive. Given the trial court's express finding that Martin was intoxicated, together with the trial court's suppression ruling, we must view Martin as having been sufficiently intoxicated that her judgment and perception were impaired.

■      Our standard of review also dictates the view that we must take of Martin in terms of her motives and possible bias in talking to police. We need not decide whether, as the parties debate, a named citizen informant is less reliable as a matter of law when that citizen provides information in response to a police investigation, rather than on the citizen's own initiative. *See generally State v. Montigue*, 288 Or 359, 363-67, 605 P2d 656 (1980) (discussing rationale for deeming named citizen informant reliable when that citizen initiates a report of a crime to a law enforcement agency). Here, apart from whether Martin adequately "initiated" a report of defendants' drug activities, the trial court found that she had possible motives to falsify her report because she had been in an altercation with her boyfriend, Reece. On appeal, we do not decide whether we would draw the same inference if we were the factfinder. We ask only whether that inference is one that the trial court reasonably could draw based on the record before it. Because the record supports the trial court's finding that Martin had possible motives to falsify her report that her boyfriend was involved in drug activities with defendants, that finding is binding on appeal. *Ehly*, 317 Or at 75.

■      In short, then, Martin was not just a named citizen informant. She was, instead, a named informant who was intoxicated enough to impair her judgment and perceptions and who had a possible motive to falsify her report. Those

facts draw into question the reliability and accuracy of Martin's information. We therefore agree with the trial court that some corroboration of the information she gave to police was needed.

■       We also agree with the trial court that the needed corroboration was wholly lacking. As the trial court emphasized, much of the information that police obtained from the hearsay sources consisted of information that defendant Robert Culley had sold drugs in the past from an apartment where he had been residing. Police did not know that defendants had moved to a residence on Hannan Lane until Martin so informed them on the date that the affidavit was prepared. What Martin told them, moreover, was limited. According to the affidavit, Martin said only that defendants had recently moved from the Azalea Reach Apartments to "the residence on Hannan." The affidavit does not suggest that Martin gave police a specific address for that residence. Nor, according to the affidavit, did Martin give police any description of the residence.[4] As the trial court observed, according to the affidavit, the only fact that police corroborated after talking to Martin was that defendants had moved *from* the Azalea Reach Apartments. The affidavit did not recite any attempt by police to corroborate that defendants in fact had moved *to* a residence on Hannan Lane and to determine, if so, which one.[5]

---

[4] To be clear, the problem is not that the affidavit or ensuing warrant lacked the required particularity in describing the place to be searched. The affidavit in fact gave the residence's specific street address (16009 Hannan Lane) and driving directions to it and described the residence in great detail. The problem, instead, is that the source of that information is not disclosed in the affidavit and that its reliability therefore cannot be assessed. According to the affidavit, the only information that police had about where defendants were residing was provided by Martin, who told police only that defendants had moved to a residence on Hannan Lane—not which one—and whose information in that regard was not corroborated in any way.

[5] The testimony at the hearing on the motion to suppress reveals how police obtained that information. One of the officers testified that, contrary to the representation in the affidavit, Martin told police that defendants had moved to a house located "off of East Haufelt Lane." Martin also described the residence to police as having a big "H" on the chimney. Police, through their own efforts, then located a house in that vicinity on Hannan Lane that had a big "H" on the chimney. After doing so, police made "drive-bys" before seeking the warrant, during which they watched activities at the residence through binoculars. The testimony at the hearing did not establish whether police saw defendants coming or going from the residence or if they otherwise confirmed that defendants were living there. The

Martin's intoxication and her possible motive to falsify her report detracted from her inherent reliability as a named citizen informant. At a minimum, therefore, *some* corroboration that defendants had, as Martin claimed, moved to an address on Hannan Lane was necessary to provide probable cause to believe that the search would discover things specified in the affidavit "in the places requested to be searched." *Villagran*, 294 Or at 408. Without that corroboration, the affidavit failed to provide probable cause to believe that defendants were residing at the particular address (16009 Hannan Lane) to be searched and that drug activity was taking place there. The trial court therefore properly suppressed the evidence seized pursuant to the warrant.

Affirmed.

---

testimony did reveal, however, that police did not observe any suspicious activities at the residence.

Insofar as the hearing provided information that would have assisted in establishing probable cause for the warrant, it is, of course, too late to shore up any deficiency. As for the information that detracted from probable cause—*e.g.*, that Martin did not tell police that the residence was on Hannan Lane and that surreptitious police observations of the residence failed to reveal any activity consistent with drug dealing—defendants did not rely on it at trial, nor did the trial court refer to it. We therefore limit our discussion to the grounds on which the trial court did find the warrant to be controverted—namely, Martin's intoxication and her possible motive to falsify the report.