Argued and submitted April 28, affirmed August 25, 1993

## STATE OF OREGON,
*Respondent,*

*v.*

## CHRIS WAYNE AUGARD,
*Appellant.*

(10-91-04552; CA A73185)

858 P2d 463

Louis R. Miles, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, Salem.

Before Deits, Presiding Judge, and Riggs and Durham, Judges.

RIGGS, J.

Durham, J., concurring.

## RIGGS, J.

Defendant appeals his conviction by the trial court for possession of a controlled substance.[1] ORS 475.992. He assigns error to the admission of evidence seized from the glove compartment of his car. We affirm.

Defendant was stopped by a state police officer for failure to dim the headlights of his car. ORS 810.410(3). As the officer approached the car, she noticed a strong odor of alcohol. Defendant was unsteady on his feet when he got out of the car. The officer conducted a driving under the influence of intoxicants (DUII) investigation. Based on defendant's admissions, physical condition, behavior and performance on the field sobriety tests, the officer determined that defendant was under the influence of both alcohol and a controlled substance.[2] She arrested him for DUII pursuant to ORS

---

[1] Defendant was also convicted of driving under the influence of intoxicants. He does not assign error to that conviction.

[2] The officer specifically testified about defendant's physical condition and behavior:

"Q: Now going back a moment to, to something that you mentioned earlier, and that is the size of the pupils of [defendant], I would first ask you, is that an indicator of whether someone is under the influence of a controlled substance?

"A: Yes, it is. * * * A person with large pupils can be under the influence of amphetamine or stimulants.

"Q: And were [defendant's] pupils unnecessarily large?

"A: Yes, they were. Almost covering the entire iris of the eye. The questions I had asked him earlier, whether he was on medication and whether he had any injuries, they were questions to rule out any other cause for his large pupil size.

"Q: Did you shine a light in his eyes to determine whether his pupils were reactive?

"A: Yes, I did.

"Q: Were they?

"A: No, they didn't constrict in light. They remained large. That's another indication of someone being under the influence of a controlled substance.

"Q: Now, during your experience as a police officer, I assume you have arrested people who * * * have failed on the field sobriety test and that you have determined are simply under the influence of alcohol; is that right?

"A: Yes.

"Q: Okay, did you notice any differences between those persons and the behavior of [defendant]?

"A: Yes.

"Q: And what were the differences?

"A: He had no divided attention. As far as his being able to perform the tests as I asked him to, he could not. The tests, I explained and I demonstrated

133.310(1)(e). The officer returned to the vehicle to search it for evidence of the crime of DUII.

Defendant objected to the search.[3] As the officer opened the car door, she noticed two empty cans of beer behind the driver's seat. The officer testified that she looked for places "where people would put open containers of alcohol whether beer or alcohol." When she opened the glove compartment, she detected the odor of methamphetamine.[4] The odor appeared to be coming from "a small brown jewelry box." She opened the box and found a spoon with methamphetamine residue on it.

■■ Before trial, defendant moved to suppress the evidence of the methamphetamine on the basis of an illegal search incident to an arrest. The trial court denied defendant's motion to suppress. It found all the facts to be essentially as the officer testified and adopted the state's analysis.[5]

"A search incident to arrest is not limited to situations where it is necessary to protect an officer's safety or to prevent the destruction of evidence. The police *may also*

them to him and at times he would move quickly and would talk very quickly and then slow down extremely and mood changes even as I was talking to him while giving the field sobriety tests.

"Q: At the time you arrested [defendant] for DUII, did you believe that he was under the influence of alcohol, a controlled substance, or possibly both?

"A: I believed he was under the influence of both."

[3] Defendant's passenger was outside the car and tried to keep the officer from opening the car door. A back-up officer arrived and took the passenger aside.

[4] The officer testified:

"What I was looking for is places where people would put open containers of alcohol, whether it is beer or hard alcohol, and I looked under the seat and then I looked inside of the glove box, which is about the right size if you wanted to hide a can of beer or actually a fifth of whiskey or small bottle of whiskey, and I opened up the glove box and at that time when I opened it up I noticed there was a strong odor of methamphetamine coming from inside of the glove box."

[5] The court found:

"I first of all find the facts to be essentially as the officer testified. I have no basis to really find anything to the contrary. She testified in a very forthright manner and I don't doubt but what things occurred in the way that she said they occurred.

"As to the motion itself, I really think the State has the better of the argument and rather than recite all those things * * * I am simply going to adopt [the State's] analysis on both prongs and rule in favor of the State and against the defendant on the motion for the reasons set out by [the State]."

*search for evidence relevant to the crime for which the defendant is being arrested.* However, such a search must be reasonable in time, scope and intensity." *State v. Vaughn*, 92 Or App 73, 77, 757 P2d 441, *rev den* 306 Or 661 (1988). (Emphasis supplied.)

In this case, the officer conducted the search immediately after the arrest for DUII and limited her search to areas in the immediate vicinity of the driver's seat where she thought it was likely the occupants may have stored evidence of intoxication. She found two empty cans of beer. Looking further for containers of alcohol, she opened the glove compartment and detected the "faint odor" of methamphetamine. Inside the glove compartment, she found a box containing methamphetamine-related drug paraphernalia.

This case is distinguishable from *State v. Porter*, 312 Or 112, 114, 817 P2d 1306 (1991), where an officer continued to search a car after finding an open container of beer and found four baggies of methamphetamine.[6] The officer ran a records check on the car after the driver looked "furtively" away. The owner of the car was wanted on a Nevada fugitive warrant. During the stop, the officer noticed an open can of beer behind the driver's seat. After the arrest, he confirmed that the can had beer in it. He then searched the car for more open beer cans. The court held that the officer had exceeded the scope of the investigation permitted by ORS 810.410(3),[7]

---

[6] This case is also distinguishable from *State v. Brody*, 69 Or App 469, 686 P2d 451 (1984). In *Brody*, the officer noticed a marijuana cigarette burning in the ash tray after he stopped the defendant for driving erratically. The officer went to his car to get a tape recorder and, when he returned, the cigarette was gone. After his arrest, and at the officer's request, the defendant retrieved the cigarette from underneath the driver's seat. The officer found more marijuana in an unzipped attache case, black capsules in the glove compartment and a scale and more marijuana behind the seat. We ruled that the officer had probable cause to conduct a limited search incident to the arrest, but that the intensity of the search after the search of the attache case was beyond the scope jusitified by a DUII arrest. 69 Or App at 473. We characterized the search of the glove compartment and behind the seat as "unreasonable exploring, rummaging or ransacking." 69 Or App at 473. The officer in this case articulated a clear reason why she reached over to open and inspect the glove compartment. She had not found any open containers around the driver's seat and noted that the compartment "is about the right size if you want to hide a can of beer or actually a fifth of whiskey or a small bottle of whiskey." Her search was reasonable in both its scope and intensity.

[7] ORS 810.410(3) provides, in part:

"A police officer:

"* * * * *

which was for an open container violation committed in his presence. Once he found evidence relevant to *that* crime, and because no statute provides that possession of a greater number of open containers is a more serious offense, he had to stop his search. Unlike in this case, the officer in *Porter* did not contend that he was searching for other evidence of intoxicants beyond open containers, and he testified that the driver did not show any signs of intoxication.

Here, the officer testified that she was investigating a DUII. Because the only beer cans she found were empty, she opened the glove compartment to search for alcohol. Inside the compartment, she found the intoxicant methamphetamine. The officer did not exceed the scope of her investigation. The trial court correctly ruled that the evidence was admissible.

Affirmed.

**DURHAM, J.,** concurring.

I concur with the majority's result but not its reasoning. In a search incident to arrest, "[o]rdinarily, the seized articles must be in plain view, or, if not, then within the immediate control of the prisoner and accessible without unreasonable exploring, rummaging or ransacking." *State v. Chinn*, 231 Or 259, 268, 373 P2d 392 (1962). The contents of defendant's glove box were not in plain view. Although the court made no specific finding regarding the "immediate control" prong of the *Chinn* test, the evidence would support a finding that that prong was satisfied. For that reason, we will presume that the facts were decided in a manner consistent with the court's ultimate conclusion that the search incident to arrest was reasonable. *See State v. Parker*, 317 Or 225, 230, 855 P2d 636 (1993); *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). Applying that rule, I conclude that the trial court implicitly found that the contents of the glove box were within defendant's immediate control and were accessible without unreasonable exploring, rummaging or ransacking.

"(b) May stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation."

I do not agree with the majority's discussion of the scope of the officer's investigation. 122 Or App at 490. The permissible scope of a search incident to arrest is governed not by what an officer might believe is a reasonable DUII investigation, but by court-made rules defining this limited exception to the warrant requirement. As we said in *State v. Kirsch*, 69 Or App 418, 422, 688 P2d 446 (1984):

> "Under Article I, section 9, a warrantless search is permissible as incident to an arrest when it is for the protection of the officer, the preservation of evidence, or 'when it is relevant to the crime for which defendant is being arrested and so long as it is *reasonable* in light of all the facts.' *State v. Caraher*, 293 Or 741, 759, 653 P2d 942 (1982) (emphasis supplied); *see also State v. O'Neal*, 251 Or 163, 444 P2d 951 (1968); *State v. Krogness*, 238 Or 135, 388 P2d 120 (1963); *State v. Chinn*, 231 Or 259, 373 P2d 392 (1962).
>
> "A search incident to arrest must be reasonable in scope, time and intensity. *State v. Caraher, [supra]*, 293 Or at 758; *State v. Chinn, supra*. It may not be an exploratory search but must be closely tied to the crime or crimes for which the police have a right to arrest the person searched. A different rule 'would open the door to complete temporary confiscation of all an arrested person's property which was in his immediate possession and control at the time of his arrest for the purpose of minute examination of it in an effort to connect him with another crime.' *State v. Elkins*, 245 Or 279, 287, 422 P2d 250 (1966). Because a search incident to an arrest is a warrantless search, the opportunity to obtain a warrant is an important limitation on the right to continue the search. '[W]hen a search reaches a logical stopping point the police *must seek a warrant* before proceeding further.' *State v. Flores*, 68 Or App 617, 634, 685 P2d 999 (1984). (Emphasis supplied.)"

We should not determine the reasonableness of a search incident to arrest by what the officer regards as a reasonable investigation of the crime for which the defendant is arrested.

For related reasons, I do not agree with the majority's attempt to distinguish *State v. Brody*, 69 Or App 469, 686 P2d 451 (1984). 122 Or App at 489 n 6. In *Brody*, the court affirmed the suppression of evidence seized from a glove box during a search incident to a DUII arrest. The majority suggests that this case is not governed by *Brody* because, here, the officer articulated a reason for searching the glove

box, and that reason related to her DUII investigation. That is a hollow distinction. The *Brody* result is attributable more to the procedural posture of the case on appeal than to the absence of an officer's explanation for searching the defendant's glove box. *See State v. Brody, supra*, 69 Or App at 474 (Gillette, P. J., concurring). Nothing in *Brody* suggests that the court would have reached a different result had the officer provided an explanation of his reason for searching the glove box. A search that exceeds the permissible limits of a lawful search incident to arrest does not acquire validity simply because the officer provides an explanation for the search. Similarly, a reasonable search incident to arrest is not vulnerable to attack because the officer does not articulate a reason for each step of the search.