Submitted May 29, affirmed September 17, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CAELA WASHINGTON,
*Defendant-Appellant.*

Multnomah County Circuit Court
130242199; A154345

335 P3d 877

Peter Gartlan, Chief Defender, and Laura E. Coffin, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Peenesh H. Shah, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Wollheim, Judge, and Lagesen, Judge.

LAGESEN, J.

**LAGESEN, J.**

This case requires us to resolve a conflict in our decisions regarding the permissible scope and intensity under Article I, section 9, of the Oregon Constitution[1] of a search of a vehicle incident to a lawful arrest for driving under the influence of intoxicants (DUII) in violation of ORS 813.010.[2] In *State v. Brody*, 69 Or App 469, 473, 686 P2d 451 (1984), we held that a "full search of the passenger compartment of a vehicle and the closed containers in it" exceeded the permissible scope and intensity of a search incident to a lawful arrest for DUII. We did so based on our conclusion that DUII is "only" a traffic offense.[3] *Id.*

---

[1] Article I, section 9, states:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

[2] Defendant does not argue that the search at issue exceeded the permissible scope of a search incident to arrest for DUII under the Fourth Amendment to the United States Constitution. Under the Fourth Amendment, as interpreted by *Arizona v. Gant*, 556 US 332, 351, 129 S Ct 1710, 173 L Ed 2d 485 (2009), an officer may search a vehicle incident to a lawful arrest of a recent occupant "only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." There is a split of authority in the lower state and federal courts as to what showing *Gant* requires to establish that it was "reasonable to believe" that a vehicle contained evidence of DUII, so as to permit a search of the vehicle for evidence of DUII incident to an arrest for DUII. *Compare Idaho v. Cantrell*, 149 Idaho 247, 254-55, 233 P3d 178, 185-86 (Idaho Ct App 2010), *rev den* (Idaho 2010) (upholding search of vehicle incident to arrest for DUII because DUII is, by its nature, "an offense for which it was reasonable to believe evidence of the offense might be found in the passenger compartment"), *and Brown v. Florida*, 24 So 3d 671, 679 (Fla Dist Ct App 2009), *rev den*, 39 So 3d 1264 (Fla 2010), *cert den*, ___ US ___, 134 S Ct 2730 (2014) (holding that, "'reasonable belief,' as used in *Gant*, is solely determined from the 'nature of the offense of arrest'"), *with United States v. Taylor*, 49 A3d 818, 8224 (DC 2012) (declining to adopt *per se* rule authorizing vehicle searches incident to arrest for DUII and instead holding that officers must have "reasonable, articulable suspicion" to search a vehicle), *and United States v. Reagan*, 713 F Supp 2d 724, 733 (ED Tenn 2010) (holding that, incident to a lawful arrest for DUII, officers may search the passenger compartment of a vehicle and any containers therein "when there is a particularized and articulable reason to believe that evidence of DUI[I] is contained inside"). Neither this court nor the Oregon Supreme Court has had occasion to address the parameters of a permissible search incident to arrest of a vehicle under the Fourth Amendment following *Gant*, and this case does not present the opportunity to do so.

[3] DUII was classified as a Class A misdemeanor at the time that we decided *Brody*. Former ORS 487.540(3) (1984), *repealed by* Or Laws 1983, ch 338, § 978 (operative Jan 1, 1986). The offense remains a Class A misdemeanor today, although it may be elevated to a Class C felony under certain circumstances. ORS 813.010(4)-(5).

By contrast, without explicitly overruling *Brody*, in *State v. Burgholzer*, 185 Or App 254, 59 P3d 582 (2002); *State v. Crampton*, 176 Or App 62, 31 P3d 430 (2001), *overruled in part on other grounds by State v. Caldwell*, 187 Or App 720, 69 P3d 830 (2003), *rev den*, 336 Or 376 (2004); and *State v. Augard*, 122 Or App 485, 858 P2d 463 (1993), we held, without regard to the fact that DUII is a traffic offense, that an officer may search a glove compartment and other closed compartments or containers in the passenger compartment of a vehicle incident to a lawful arrest of the driver for DUII, provided that evidence of DUII reasonably could be concealed in the parts of the car that the officer searched.

We conclude that the rule of law articulated by our later cases is correct, in the light of the Supreme Court's post-*Brody* decision in *State v. Owens*, 302 Or 196, 729 P2d 524 (1986). Accordingly, we overrule *Brody* to the extent that it held that the scope and intensity of a permissible search incident to arrest turns on whether or not the offense of arrest is a traffic offense. Applying the rule of law established by *Owens, Burgholzer, Crampton*, and *Augard*, we conclude that the search incident to arrest that led to the discovery of defendant's firearm complied with Article I, section 9. Accordingly, the trial court properly denied defendant's motion to suppress, and we affirm defendant's conviction and sentence.

## I. BACKGROUND

Defendant was a passenger in a car stopped by Officer Turnage after Turnage observed the driver, Moullet, make an illegal turn. After making contact with the car, Turnage "smell[ed] a strong odor of alcoholic beverage coming out of the car" and observed that Moullet "had bloodshot, watery eyes, fumbling hand movements, [and] was showing some indication of impairment." Moullet told Turnage that he had taken a Percocet nine and one-half hours earlier, that he had used marijuana four and one-half hours earlier, and that he had also consumed two beers and "a couple of shots" of alcohol sometime earlier in the evening. Moullet agreed to take field sobriety tests. He failed them, and, based on Turnage's determination that Moullet had been

driving under the influence of both alcohol and controlled substances, Turnage arrested Moullet for DUII.

With Moullet secured in a patrol car, Turnage asked defendant to leave the vehicle so that he could search it for evidence that Moullet had committed the offense of DUII. Turnage located three "single buds of marijuana" on the driver's side floorboard. He also discovered a glass jar holding "remnants of marijuana; stems [and] some trace residue" beneath the driver's seat. At that time, Turnage opened the unlocked center console and found a loaded gun, specifically, a Ruger 9mm. Noticing that defendant carried a purse with a bulge, Turnage asked her if she had any weapons on her. Defendant replied that her gun was in the center console. Turnage arrested defendant for unlawful possession of a firearm and unlawful possession of a controlled substance.

At trial, defendant moved to suppress the evidence of the gun on the ground that, among other reasons, the search incident to arrest was invalid under Article I, section 9, because it was not reasonable in scope or intensity. In particular, she contended that the opening of the center console exceeded the lawful scope and intensity of Turnage's search. At the hearing on defendant's motion to suppress, Turnage testified that he had searched the car for evidence of DUII, explaining that, in conducting a search incident to arrest for DUII:

"We're looking for evidence of the crime of DUII, and evidence can range everything from alcohol containers, empty cans. In cases of drug impairment you're looking for the drugs. You're looking for pipes, marijuana, pill bottles, pills. Also, times when people go to bars they don't give things away so they have receipts. You're looking for receipts; a receipt, you know, when the bar—'I just left "X" Pub,' and you're looking for receipts from that pub.

"And in this case there was no indication as to where exactly they left from. However, those are things that we're looking for and that helps paint a picture as to how long ago the person may have consumed alcohol and kind of the evidence of the crime."

The trial court denied the motion to suppress, ruling that Turnage's search was a lawful search incident to the arrest of Moullet for DUII.[4] Defendant conditionally pleaded no contest to unlawful possession of a firearm, reserving the right to pursue this appeal of the court's denial of her suppression motion. On appeal, she assigns error to the trial court's conclusion that Turnage's search incident to the arrest of Moullet did not exceed the permissible scope and intensity of a search incident to a lawful arrest for DUII.

## II. STANDARD OF REVIEW

We review a trial court's denial of a motion to suppress to determine whether there is sufficient evidence in the record to support the trial court's explicit and implicit factual findings, and to determine whether the court correctly applied the law to those facts. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993). Here, the parties do not dispute the underlying historical facts. Accordingly, we review to determine whether the trial court legally erred when it concluded that those historical facts demonstrate that the search at issue was a lawful search incident to Moullet's arrest for DUII.

## III. ANALYSIS

Article I, section 9, authorizes a search incident to arrest for three purposes: (1) to protect the officer's safety; (2) to prevent the destruction of evidence; and (3) to discover evidence of the crime of arrest. *State v. Hoskinson*, 320 Or 83, 86, 879 P2d 180 (1994). Where, as here, an officer seeks to search a car incident to the arrest of the driver after the driver has been secured away from the car, only the third purpose—discovering evidence of the crime of arrest—provides a potential authorization for a search. *See State v. Fesler*, 68 Or App 609, 611, 613, 685 P2d 1014, *rev den*, 297 Or 547 (1984) (where the defendant was secured in a patrol

---

[4] The state did not contend below, and does not contend on appeal, that defendant—as a passenger in the car—lacked a privacy interest in the car or otherwise lacked standing to challenge the search of the car incident to the arrest of the driver. *See State v. Tucker*, 330 Or 85, 87-89, 997 P2d 182 (2000) (under ORS 133.693(4), the state bears the burden of proving that a defendant did not have a protected interest in place or items searched). Along the same lines, defendant does not contend that the fact that it was Moullet who was under arrest, and not her, bears on the validity of the search.

car, there was "no suggestion * * * that the search of [his] car was occasioned by a desire to protect the officers' safety or to prevent the destruction of evidence"). Under those circumstances, an officer is authorized to search a car incident to the arrest of the driver if evidence of the crime of arrest reasonably could be concealed in the car, *Crampton*, 176 Or App at 72, and the search is otherwise reasonable in "time, scope, and intensity." *Burgholzer*, 185 Or App at 259; *see also State v. Hartley*, 96 Or App 722, 725, 773 P2d 1356, *rev den*, 308 Or 331 (1989) ("The scope of a search of an automobile conducted incident to an arrest is subject to the same criteria as any search incident to an arrest. If the search is for evidence related to the crime for which the defendant was arrested, it must be reasonable in time, scope, and intensity."). Notably, "[i]n Oregon, a search incident to an arrest does not require probable cause beyond the basis for the arrest itself." *Fesler*, 68 Or App at 612.

A search is reasonable in time if it "occur[s] immediately after [a] defendant's arrest." *Burgholzer*, 185 Or App at 259; *see also Fesler*, 68 Or App at 613 (timing of search was reasonable when it was "substantially contemporaneous with" the arrest of the defendant). A search is reasonable in scope and intensity if it is "sufficiently close in space to the arrest"; that is, if it is confined to the area that was in the immediate control of the suspect at the time of the arrest, *State v. Vaughn*, 92 Or App 73, 78, 757 P2d 441, *rev den*, 306 Or 661 (1988), and it extends only to places where evidence of the crime of arrest (that is, the "instrumentalities" or "fruits" of the crime) reasonably could be concealed. *State v. Hite*, 198 Or App 1, 7, 107 P3d 677 (2005) (quoting *Owens*, 302 Or at 200); *see also Burgholzer*, 185 Or App at 259-60 (search was reasonable in scope and intensity where container searched was "plainly within [the] defendant's immediate possession shortly before the arrest" and was "a place where evidence of [the crime of arrest] could have been concealed"). Notably, officers may open a closed container in conducting a search incident to arrest if evidence of the crime of arrest reasonably could be concealed in that container. As the Supreme Court held in *Owens*,

"[a]s long as the search is for evidence of the crime for which the arrest was made, and such evidence reasonably

could be concealed on the arrestee's person or in the belongings in his or her immediate possession at the time of the arrest, no 'container rule' blocks the intensity of the incidental search.

"* * * * *

"Thus, the Oregon Constitution authorizes the meticulous investigation of closed containers, such as wallets, purses, cigarette cases and other personal 'effects,' found on or immediately associated with the arrestee, but only when it is reasonable to believe that evidence of a crime for which the person was arrested could be concealed there."

302 Or at 201-02.

Applying that legal standard, we routinely have upheld searches of closed containers in cars incident to arrests for DUII where the containers are the type that reasonably could conceal evidence of alcohol (if the arrest was for driving under the influence of alcohol) or drugs (if the arrest was for driving under the influence of drugs), provided that the search occurred at the time of arrest, and the arrestee had been in the car immediately before the arrest. *See Burgholzer*, 185 Or App at 261 (officer permissibly opened cigarette package found in car during search incident to arrest for driving under the influence of a controlled substance, because "cigarette package was a place where evidence of that crime could have been concealed"); *Crampton*, 176 Or App at 74 (officer permissibly opened locked toolbox and "long cases" found in car during search incident to arrest for driving under the influence of drugs and unlawful possession of firearms, because "the containers were the types of containers in which weapons or drugs were likely to be found"); *Augard*, 122 Or App at 487, 490 (officer permissibly opened glove compartment during search incident to arrest for driving under the influence of alcohol and a controlled substance); *cf. State v. Clew*, 187 Or App 322, 324, 328, 67 P3d 420 (2003) (officer permissibly opened backpack next to driver's seat of car during search incident to arrest of driver for possession of marijuana; backpack "was the type of container in which marijuana could be found").

Under *Burgholzer*, *Crampton*, and *Augard*, the search incident to arrest at issue here—including the search

of the center console—plainly comported with Article I, section 9. Moullet had been driving the car immediately before his arrest for driving under the influence of both alcohol and controlled substances, and Turnage searched the car at the time of Moullet's arrest. Evidence of Moullet's crime of arrest reasonably could have been concealed within the car, particularly given the odor of alcohol emanating from the car, as well as Moullet's admissions regarding his use of Percocet and marijuana. Moreover, the center console—where, it turns out, defendant's gun was concealed—was the type of container in which Moullet reasonably could have concealed alcohol or drugs.[5] Although the trial court did not make express findings about the size of the console, it was large enough to hold defendant's 9mm pistol, and thus reasonably could have concealed pills, marijuana, or single-serve bottles of alcohol.

Defendant does not attempt to distinguish *Burgholzer*, *Crampton*, and *Augard*, or contend that those cases are wrongly decided. Defendant also does not argue that the car could not reasonably have concealed evidence of DUII, and she apparently concedes that Turnage was authorized to search at least some part of the passenger compartment of the car. Instead, defendant argues that, under *Brody*, Turnage exceeded the permissible scope and intensity of a search incident to arrest when he opened the closed center console, revealing defendant's gun.

If *Brody* is still good law, then Turnage's search of the center console arguably exceeded the permissible scope and intensity of a search incident to arrest for DUII. In *Brody*, we concluded that officers could conduct only a "limited" search of the passenger cab of a truck incident to an arrest for DUII, but could not conduct a "full" search of the cab and the closed compartments therein. 69 Or App at

---

[5] As mentioned, Turnage also testified that the center console could contain receipts, if Moullet had just departed from a pub, but testified further that "there was no indication as to where exactly [Moullet and defendant] left from." Because the center console reasonably could have concealed alcohol or drugs ("instrumentalities" of Moullet's crime of arrest), we do not address whether and to what extent Article I, section 9, permits an officer to open a closed container during a search incident to arrest to look for *records* of the instrumentalities or fruits of a crime (such as receipts), as distinct from the instrumentalities or fruits of the crime themselves.

472-73. We based that conclusion on the fact that DUII was "only" a traffic offense and thus did not permit an "extended" search incident to arrest. We explained:

> "Although DUII is a serious traffic offense, it is still only that—a traffic offense. *A full search of the passenger compartment of a vehicle and the closed containers in it is not reasonable as incident to a DUII arrest* even when, as here, the officer also discovers small amounts of intoxicants. The extended search violated Article I, section 9."

*Id.* at 473 (emphasis added; internal footnotes omitted). Applying that standard, we held that the officer permissibly had searched an open attaché case on the seat next to the driver incident to the driver's arrest for DUII, but that the officer exceeded the permissible scope and intensity of a search incident to arrest when the officer opened the glove compartment and looked behind the seat. *Id.* at 471-73.

To the extent that we held in *Brody* that the permissible scope and intensity of a search incident to arrest hinges on whether or not the offense of arrest is a traffic offense, we do not believe that that holding survives the Supreme Court's decision in *Owens*. We therefore expressly overrule it.[6] *Owens* establishes that the permissible scope and intensity of a search incident to arrest does not turn on whether or not a particular criminal offense is a traffic offense.[7] Rather, it turns on whether the space searched was in the immediate control of the arrestee before the arrest, and on whether that space (and the containers therein) reasonably could conceal evidence of the crime of arrest. Where

---

[6] We addressed *Brody* in a footnote in *Augard*. We did not explicitly overrule it but, instead, distinguished it on the ground that the officer's testimony in *Augard* about her reasons for searching the glove compartment for evidence of alcohol was more detailed than the testimony given by the officer in *Brody*. *Augard*, 122 Or App at 489 n 6. As the concurring judge in *Augard* noted at the time, "That is a hollow distinction." *Id.* at 492 (Durham, J., concurring).

[7] Of course, many traffic offenses are not *criminal* offenses. Where a traffic offense is not a crime, an officer cannot arrest a person for committing that offense. ORS 810.410(3)(a). If an officer cannot arrest a person for a particular offense, then the officer cannot conduct a "search incident to arrest" for the offense. *Cf. State v. Porter*, 312 Or 112, 120-21, 817 P2d 1306 (1991) (search of automobile for additional evidence of open containers not authorized in connection with investigation of noncriminal traffic violation); *Knowles v. Iowa*, 525 US 113, 118-19, 119 S Ct 484, 142 L Ed 2d 492 (1998) (Fourth Amendment does not permit "search incident to citation" for traffic offense).

a particular offense is one "which ordinarily has neither instrumentalities nor fruits which could reasonably be concealed on the arrestee's person or in the belongings in his or her immediate possession," officers cannot conduct a search incident to an arrest for that offense for the purpose of discovering evidence of that offense.[8] *Owens,* 302 Or at 200.

However, as our post-*Owens* decisions in *Burgholzer, Crampton,* and *Augard* make clear, DUII is a criminal offense where the instrumentalities of the crime reasonably could be concealed in the suspect's immediate possession in the passenger compartment of the car that the suspect was driving. Thus, under those decisions, an officer may search closed containers in a car incident to the driver's arrest for DUII, if those containers were in the driver's immediate control before the arrest and if those containers reasonably could conceal evidence of DUII. Here, for the reasons explained above, the center console reasonably could have concealed evidence of DUII. Accordingly, Turnage permissibly searched that console incident to Moullet's arrest for DUII.

Affirmed.

---

[8] For example, as the Supreme Court held in *Gant,* the offense of driving while suspended is "an offense for which police could not expect to find evidence in the passenger compartment" of the car of a driver arrested for that offense. 556 US at 344. For that reason, the Supreme Court held in *Gant* that the Fourth Amendment does not permit an officer to search a car incident to the arrest of its driver for driving while suspended when the driver has been secured outside reaching distance of the vehicle. *Id.*