Submitted April 29, 2015, affirmed September 21, 2016, petition for review denied January 13, 2017 (360 Or 752)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KRYSTAL LEE KRAUSE,
*Defendant-Appellant.*

Washington County Circuit Court
C130349CR; A154713

383 P3d 307

Peter Gartlan, Chief Defender, and Sarah Laidlaw, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and David B. Thompson, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Egan, Judge.

**HADLOCK, C. J.,**

Defendant appeals a judgment of conviction for unlawful possession of methamphetamine (ORS 475.894), assigning error to the trial court's denial of her suppression motion.[1] A police officer found methamphetamine inside an Altoids tin in defendant's backpack. Defendant contends that the officer's search of the Altoids tin was unlawful and, accordingly, the trial court erred when it denied her motion to suppress the evidence found within that container. For the reasons set forth below we disagree and, accordingly, affirm.

We describe the pertinent facts as found by the trial court, as the record supports the court's findings. *State v. Culley*, 198 Or App 366, 374, 108 P3d 1179 (2005). Officer Berry observed defendant commit multiple traffic violations as she drove in the area of a middle school and some elementary schools. After stopping defendant and ascertaining that she lacked insurance, Berry arranged for defendant's van to be towed. Before the van was towed, Berry allowed defendant to retrieve anything from the vehicle that she wished; defendant took some items, but left a backpack on the passenger seat of the van. Following the City of Beaverton's inventory policy, Berry conducted an inventory of the van, while defendant stood outside of the vehicle. As part of that inventory, Berry opened the backpack, revealing marijuana, hypodermic needles, and a closed Altoids tin. Based on those observations, Berry concluded that she had probable cause to believe that defendant had unlawfully possessed controlled substances within 1,000 feet of a school, meaning that she had probable cause to arrest defendant. And based on that conclusion, Berry opened the Altoids tin, revealing additional controlled substances. She subsequently took defendant into custody.

After defendant was charged with unlawful possession of methamphetamine, she moved to suppress the evidence found in the Altoids tin, arguing that Berry's search of the tin violated Article I, section 9, of the Oregon

---

[1] ORS 475.894(1) makes it unlawful "for any person knowingly or intentionally to possess methamphetamine" except in specified circumstances not present here.

Constitution.[2] The trial court determined that Beaverton's inventory policy justified Berry looking into the backpack and that, once Berry saw what was inside the backpack, she had probable cause to believe that defendant had committed the crime of possessing controlled substances within 1,000 feet of a school. That probable cause, the court concluded, justified Berry's search of the Altoids tin as a search incident to arrest, despite the fact that defendant was outside of the van when Berry conducted that search. Accordingly, the court denied defendant's suppression motion.

On appeal, defendant assigns error to that ruling. Her argument is narrow. Defendant does not challenge Berry's authority to open the backpack during her inventory of defendant's van. Defendant also does not dispute that Berry's observations of the visible contents of the backpack (including marijuana and hypodermic needles) gave her probable cause to believe that additional controlled substances were contained in the Altoids tin located inside the backpack. And defendant does not appear to challenge the principle that a search incident to arrest may occur when an officer has developed probable cause to make an arrest, even if the defendant has not yet actually been taken into custody. *State v. Kemp*, 112 Or App 522, 527-28, 831 P2d 37, *rev den*, 313 Or 627 (1992).

Instead, defendant argues only that Berry could not open the Altoids tin as part of a search incident to arrest because Berry did not develop probable cause to arrest defendant until after defendant had exited the van and, therefore, no longer had control over the backpack and the Altoids tin inside it. In considering that argument, we review the trial court's "denial of [the] motion to suppress for legal error, and we are bound by the trial court's implicit and explicit findings of historical fact as long as the record includes constitutionally sufficient evidence to support those findings." *State v. Walker*, 277 Or App 397, 398, 372 P3d 540 (2016).

Defendant's argument fails in light of settled principles that guide our analysis of warrantless searches that the

---

[2] Defendant's suppression motion raised additional issues that she does not reiterate on appeal.

state seeks to justify as searches incident to arrest. "Article I, section 9, guarantees that '[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search[.]'" "Warrantless entries and searches of premises are *per se* unreasonable unless they fall within an exception to the warrant requirement." *State v. Kelly*, 274 Or App 363, 372, 360 P3d 691 (2015). One such exception, at issue here, is a search incident to arrest. *State v. Mazzola*, 356 Or 804, 811-12, 345 P3d 424 (2015).

"A warrantless search incident to arrest can be made for any of three purposes: (1) to protect a police officer's safety; (2) to prevent the destruction of evidence; or (3) to discover evidence of the crime of arrest." *Id.* at 811. The first two of those purposes underlying the exception to the warrant requirement relate, in some ways, to exigency, that is, to an officer's present need to keep people safe and prevent the destruction of evidence. It may follow that, in many circumstances, searches incident to arrest for those two reasons will be justified only when the area searched is still within the defendant's control, so that the defendant would be able to obtain a weapon stashed in the area or to destroy or conceal evidence located there. *See State v. Groom*, 249 Or App 118, 122, 274 P3d 876, *rev den*, 352 Or 665 (2012) (describing the first two bases for search incident to arrest as justified by the need "to protect the arresting officer in case the suspect has a weapon within reach and to prevent the suspect from reaching and destroying evidence").

However, the same is not true of the third basis for a search incident to arrest: "to discover evidence of the crime of arrest." *State v. Washington*, 265 Or App 532, 536, 335 P3d 877 (2014). Rather, a search for that purpose may be justified even if the defendant has been removed from the area in which an officer believes that evidence may be located. *Id.* In those circumstances, the search will comport with Article I, section 9, even though the defendant no longer has control over the area searched, as long as the evidence reasonably could be found in that area and the search is otherwise reasonable in time, scope, and intensity. *Id.* at 537. Moreover, "officers may open a closed container" in the course of searching incident to arrest for the purpose of

finding evidence of the crime of arrest if such evidence "reasonably could be concealed in that container." *Id.*

We discussed that principle in *Washington*, a case in which the defendant was a passenger in a car that was stopped by a police officer who saw the driver make an illegal turn. *Id.* at 534. The officer observed some indications of impairment and administered field sobriety tests to the driver, who failed them. *Id.* at 534-35. The officer arrested the driver and secured him in a patrol car, then searched the car (including the closed center console) for evidence that the driver had been driving under the influence of intoxicants. That search revealed evidence supporting the defendant's arrest. *Id.* at 535. The defendant unsuccessfully moved to suppress that evidence on the ground that the search incident to arrest of the driver violated Article I, section 9. We held that the trial court correctly denied the suppression motion because the officer's search of the car "plainly comported with Article I, section 9": the driver "had been driving the car immediately before his arrest," the officer "searched the car at the time of [the] arrest," and evidence of the driver's crime "reasonably could have been concealed within the car," including the center console. *Id.* at 539.

Notably, the arrest of the driver in *Washington* apparently did not occur until *after* the driver was outside of the car and had performed, and failed, field sobriety tests. *Id.* at 534-35. What mattered was not whether the driver was still in the car or otherwise had control over it at the moment that he was arrested. Rather, what mattered was that the driver had controlled the car "immediately *before* his arrest" and that the search followed closely on the heels of that arrest, making the search of the car incident to the driver's arrest reasonable in time and scope. *Id.* at 539 (emphasis added).

That principle also is illustrated by *State v. Augard*, 122 Or App 485, 858 P2d 463 (1993). In that case, a police officer stopped the defendant for failing to dim his headlights and noticed the odor of alcohol as she approached the defendant's car. The defendant "got out of the car," and the officer then conducted an investigation to determine whether the defendant had committed the crime of driving under the

influence of intoxicants (DUII). *Id.* at 487. Based on that investigation, which included field sobriety tests, the officer determined that the defendant was under the influence of intoxicants and arrested him. The officer then "returned to the vehicle to search it for evidence of the crime of DUII." *Id.* at 488. We held that the officer's search of the car was a permissible search incident to arrest because it occurred "immediately *after* the arrest for DUII" and was limited "to areas in the immediate vicinity of the driver's seat." *Id.* at 489 (emphasis added). The fact that the officer did not arrest the defendant until after he had left the car—and appears not to have had probable cause to make that arrest until after the DUII investigation was performed—did not prevent us from concluding that the subsequent search of the defendant's car was reasonable in time, scope, and intensity.

We have similarly upheld searches incident to arrest in other cases in which the defendant had left the area that was subsequently searched *before* the officer arrested—or developed probable cause to arrest—the defendant. *See State v. Burgholzer,* 185 Or App 254, 256-57, 59 P3d 582 (2002) (search of car incident to arrest was permissible when, after the defendant performed field sobriety tests, an officer concluded that he had probable cause to arrest the defendant for DUII); *State v. Clew,* 187 Or App 322, 324-25, 328-29, 67 P3d 420 (2003) (after ordering a person whose driver's license was suspended to get out of his car so it could be towed, a police officer discovered that the person possessed drugs, arrested him for that crime, and then searched the car incident to that arrest; we held that the search was reasonable in time, scope, and intensity in part because it occurred immediately following the defendant's arrest).

The common thread in all of those cases is that the defendant had been in a car, got out of the car (either to perform field sobriety tests or for some other reason), and an officer *then* developed probable cause to arrest the defendant for a crime that the defendant had committed while in the car. In each of those cases, we concluded that the officer's search of the car incident to arrest was reasonable in time, scope, and intensity—even though the defendant had not been in the car *at* the time of their arrest.

The same result follows here. Berry's inventory of the van occurred promptly after she determined that defendant lacked insurance and decided to tow defendant's van, which was blocking a lane of travel. Berry developed probable cause to arrest defendant during the course of conducting that inventory, and she searched the Altoids tin (which was inside the backpack, inside the van) incident to defendant's imminent arrest for that crime immediately upon developing probable cause for the arrest. Thus, Berry's search of the Altoids tin occurred immediately after Berry developed probable cause for defendant's arrest, and defendant had exited the van only shortly before that occurred. The search of the tin therefore was reasonable in time, scope, and intensity under the circumstances and, consequently, did not violate Article I, section 9. *See Burgholzer*, 185 Or App at 259-60 (search of car incident to arrest was reasonable in time because "the search occurred immediately after [the] defendant's arrest" and was reasonable in scope because it "occurred in the interior of [the] defendant's vehicle, which he had been driving immediately before the arrest").[3]

Affirmed.

**EGAN, J.,** dissenting.

I respectfully dissent from the majority's holding that the search of the Altoids tin was justified as a search incident to defendant's arrest. I believe that the search was unreasonable in light of the circumstances presented in this case, and that the contents of the tin should have been suppressed.

Article I, section 9, of the Oregon Constitution guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure." "A search conducted without a warrant is presumed to be unreasonable." *State v. Hite*, 198 Or App 1, 6, 107 P3d 677 (2005). It is thus incumbent on the state to prove that a warrantless search is justified under a recognized exception to that rule. *Id.* One such exception is the search incident to

---

[3] Defendant cites the Fourth Amendment to the United States Constitution but does not develop a separate argument under that constitutional provision. Accordingly, we do not separately analyze the validity of the search under the federal constitution.

arrest. However, it is well established that a search incident to arrest is not without limitations. The search must be reasonable in time, scope, and intensity. *State v. Caraher*, 293 Or 741, 758-60, 653 P2d 942 (1982). The appropriate test to apply is "the reasonableness of the search in light of the circumstances of the particular case." *State v. Owens*, 302 Or 196, 202, 729 P2d 524 (1986). "Because a search incident to an arrest is a warrantless search, the opportunity to obtain a warrant is an important limitation on the right to continue the search. '[W]hen a search reaches a logical stopping point the police *must seek a warrant* before proceeding further.'" *State v. Kirsch*, 69 Or App 418, 422-23, 686 P2d 446, *rev den*, 298 Or 151 (1984) (quoting *State v. Flores*, 68 Or App 617, 634, 685 P2d 999, *rev den*, 298 Or 151 (1984) (emphasis in *Kirsch*)).

I believe that, in light of the circumstances presented in this case, Berry's search of the closed Altoids tin was unreasonable. After Berry stopped defendant for committing a traffic infraction and learned that defendant had been driving without insurance, Berry immediately arranged for defendant's vehicle to be towed. Berry then conducted a routine inventory search in preparation for the tow. During that inventory search, Berry observed marijuana in plain view inside of a backpack and developed probable cause to arrest defendant for possession of marijuana within 1,000 feet of a school. At the moment that Berry developed probable cause to make an arrest, defendant had been removed from her car and denied access to it or its contents, including the Altoids tin. I believe that Berry's search reached its logical stopping point after she observed the marijuana in plain view and had probable cause to place defendant under arrest for a crime. The state's evidence failed to demonstrate any exigent circumstance warranting the continued and deeper intrusion into defendant's personal property by searching the closed Altoids container for further evidence of the crime. Indeed, defendant's vehicle was going to be towed, and Berry had ample opportunity to apply for a warrant to search the contents of the Altoids tin.

In reaching its conclusion, the majority draws a distinction between the first two justifications for search incident to arrest—officer safety and to prevent the destruction

of evidence—and the third justification for search incident to arrest—to discover evidence of the crime of arrest. It is the majority's conclusion that the first two justifications are rooted in exigency, while the third justification is not. As a result, the majority suggests that a reasonable search justified by officer safety and to prevent the destruction of evidence may be justified "only when the area searched is still within the defendant's control, so that the defendant would be able to obtain a weapon stashed in the area or to destroy or conceal evidence located there." 281 Or App at 146. The majority argues that, to the contrary, a search for evidence of the crime of arrest "may be justified even if the defendant has been removed from the area in which an officer believes that evidence may be located." *Id.*

I do not agree that exigency should be taken out of the equation when the third justification for search incident to arrest is relied upon by the state. Nor do I believe that a search for evidence of the crime of arrest is justified when the area of the search is not within the defendant's immediate control at the time that probable cause is developed. Exigency is the backbone of the search-incident-to-arrest exception to the warrant requirement. *See State v. Clarke,* 110 Or App 114, 116-17, 822 P2d 138 (1991) (stating that the search-incident-to-arrest rule exists because "'an arrest * * * creates a type of exigency justifying a warrantless search of the arrested person'" (quoting *State v. Milligan,* 304 Or 659, 669, 748 P2d 130 (1988)). It should remain the primary consideration in determining the reasonableness of a search incident to arrest, regardless of whether that search is effectuated for officer safety, to prevent the destruction of evidence, or for discovery of evidence related to the crime of arrest. The majority's holding suggests that exigency is no longer a factor in determining whether a warrantless search for evidence of the crime of arrest is reasonable. That holding only serves to further undercut the protections afforded to citizens under the Oregon Constitution.

I also disagree with the majority's contention that a search "*will* comport with Article I, section 9, even though the defendant no longer has control over the area searched, as long as the evidence reasonably could be found in that

area and the search is otherwise reasonable in time, scope, and intensity." 281 Or App at 146 (emphasis added). The majority relies primarily on *State v. Washington*, 265 Or App 532, 335 P3d 877 (2014), in which we affirmed the search of a vehicle incident to the driver's arrest for driving under the influence of intoxicants (DUII). In that case, we held that "an officer may search closed containers in a car incident to the driver's arrest for DUII, if those containers were in the driver's immediate control before the arrest and if those containers reasonably could conceal evidence of DUII." *Id.* at 541. To the extent that the majority is relying on *Washington* as delineating a definite exception to the warrant requirement, I do not believe we should be taking such a categorical approach to the search-incident-to-arrest doctrine. Rather, we must consider the individual circumstances of each case prior to determining whether the police may search the interior of a vehicle, and any closed containers within it, upon the arrest of a driver.

*Washington* is factually very different from the instant case. The defendant in *Washington* was not the driver of the car, but was a passenger in the car. After the driver of the car was pulled over and arrested for DUII, the defendant was asked to leave the car so that it could be searched incident to the driver's arrest. *Id.* at 534-35. During the ensuing search, marijuana was found beneath the driver's seat and gun was found in the car's center console. The defendant admitted that the gun was hers, and she was arrested for unlawful possession of a firearm and unlawful possession of a controlled substance. *Id.* at 535. At the time the driver was arrested and secured in a patrol car, the defendant was still seated in the car and had access to the center console and the driver's side floorboard. The defendant's presence during the driver's arrest created an exigency that justified removing her from the car and searching it for evidence of the DUII. Furthermore, there was no evidence presented in *Washington* that the vehicle in question was going to be towed or impounded upon the driver's arrest, which created another exigency justifying the warrantless search.

The circumstances here are quite different. At the time that Berry observed the marijuana in plain view and developed probable cause to place defendant under arrest,

defendant had already been removed from the vehicle and denied access to the interior of the vehicle and its contents. The Altoids tin, which was found in a backpack between the front seats, was not within defendant's immediate control at the outset of the inventory search. Rather, the tin was within the exclusive control of the police department. The state did not present evidence of exigent circumstances or provide any cause to believe that Berry could not reasonably pause to apply for a warrant to search the Altoids tin.

More troubling than the strict legal analysis is the implication of the majority opinion. If, as the majority announces, the state is entitled to search a vehicle, defendant's backpack therein, and, further, a small opaque tin within that backpack, then where does the presumption of a requirement for a warrant begin? My point is simple. Once the exigency is removed and the police have time to reflect on the question of what is likely in the closed container, they have the time to request "a warrant authorized by a neutral and detached judicial officer" so as to insure a "'reliable safeguard against improper searches'" that accompany the "'hurried judgment of a law enforcement officer engaged in the often competitive enterprise of ferreting out crime.'" *Lo-Ji Sales, Inc. v. New York*, 442 US 319, 326, 99 S Ct 2319, 60 L Ed 2d 920 (1979) (quoting *United States v. Chadwick*, 433 US 1, 9, 97 S Ct 2476, 53 L Ed 2d 538 (1977) (internal citation and quotation marks omitted)). The implication of the majority's view that exigency is not necessary to justify a search incident to arrest to obtain evidence of the crime of arrest is that, once such a search commences, the presumption that a warrant is required is lifted and the search effectively has no limits. Consequently, an officer's failure to recognize a point at which the exigency no longer excuses a warrantless search reduces Article I, section 9, to a nullity.

Under the circumstances of this case, where there was no exigency present and there was sufficient time for Berry to obtain a search warrant, I would find that the search of the Altoids tin exceeded the scope of a reasonable search incident to arrest. I would reverse defendant's judgment of conviction. I therefore dissent.