No. 894          December 11, 2024          763

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TERESA MICHELLE DUFFEE,
*Defendant-Appellant.*

Washington County Circuit Court
21CR41307; A178547

Oscar Garcia, Judge.

Argued and submitted April 22, 2024.

Kali Montague, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Erica L. Herb, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Lagesen, Chief Judge, and Mooney, Senior Judge.

MOONEY, S. J.

Affirmed.

**MOONEY, S. J.**

Defendant appeals a judgment of conviction for unlawful possession of methamphetamine, ORS 475.894. In a single assignment of error, defendant challenges the trial court's denial of her motion to suppress evidence obtained during a traffic stop. Defendant contends that police unlawfully extended the scope of the stop by (1) investigating whether the car was stolen without reasonable suspicion and (2) asking defendant whether her purse contained drugs.[1] In defendant's view, those unlawful extensions tainted her arrest such that suppression of the methamphetamine discovered in her purse was required. Alternatively, defendant contends that the search-incident-to-arrest exception did not justify the warrantless search of her purse because the state failed to prove actual exigency. For the reasons that follow, we affirm.

"We review a trial court's denial of a motion to suppress for legal error, and we are bound by the trial court's factual findings if there is any constitutionally sufficient evidence in the record to support them." *State v. Maciel-Figueroa*, 361 Or 163, 165-66, 389 P3d 1121 (2017). Where the trial court did not make explicit findings, "we will presume that the trial court decided the facts consistently with the trial court's ultimate conclusion." *Id.* at 166. We state the facts consistently with that standard.

While on patrol, a police officer spotted a truck without a license plate. An expired trip permit was displayed in the truck's rear window. The officer followed the truck and further observed that the trip permit was oddly formatted—the ink color was "different" and the date on the permit appeared to be written in ballpoint pen. The officer stopped the truck in a parking lot based on the expired permit. As the officer approached, an individual riding in the truck bed jumped out and walked away. The officer asked the driver, defendant's boyfriend, for his license, which he did not have. The officer then asked if the car was insured. Defendant explained that she had recently purchased the truck and was still in the process of insuring it. At that point, the officer proceeded to search for the vehicle identification number (VIN) in order to identify the truck and

---

[1] The parties agree that the stop itself was lawful.

to determine whether it was stolen. The VIN was visible through the front windshield, and the driver moved something that was covering the VIN. After initially misreading the VIN, the officer eventually reported the correct VIN to dispatch. The officer first received confirmation through the Mobile Dispatch Terminal in his patrol car that the truck had been reported stolen.

While he waited for dispatch to also confirm the truck's stolen status, the officer *Mirandized* defendant and questioned her about how she acquired the truck and about a broken key in the ignition. Defendant first stated that she purchased the truck from someone through "OfferUp," a mobile app and online marketplace, but that she did not know his name. Then later, she admitted that she knew the seller only as "Sanny." The officer questioned her about items in the truck bed, and defendant asked if she was under arrest, to which the officer replied that he was "still trying to figure that out." The officer then asked whether her purse contained any drugs or weapons, which defendant denied. Defendant again asked the officer if she was under arrest, and the officer replied that he was still deciding whether "to take [her] to jail or give [her] a citation" and that he would "need to talk to the victim as well." After asking a question about the man riding in the truck bed, the officer again asked whether there was "dope" in her purse, which defendant again denied. The officer arrested defendant for possession of a stolen vehicle (PSV), ORS 819.300, and unauthorized use of a vehicle (UUV), ORS 164.135. The officer then conducted a search incident to arrest of the truck as well as defendant's purse, in which methamphetamine was found. At the suppression hearing, the officer testified that he received confirmation from dispatch that the truck was stolen "a few minutes" before placing defendant in handcuffs.

The trial court denied defendant's motion to suppress the methamphetamine. In support of its ruling, the trial court found that the officer developed reasonable suspicion that the car was stolen as the stop progressed and that, to the extent the officer's questions about drugs were unrelated to that investigation, the questions did not lead to the discovery of the methamphetamine.

We first address whether the officer had reasonable suspicion to investigate whether the truck was stolen. Article I, section 9, of the Oregon Constitution[2] imposes both "subject-matter and durational limitations" on all investigative activities and inquiries conducted during a traffic stop. *State v. Arreola-Botello*, 365 Or 695, 712, 451 P3d 939 (2019). As we have explained, "[o]fficers investigating a traffic infraction cannot engage in investigative activities *** that are unrelated to that infraction, unless those activities have an independent constitutional justification, such as reasonable suspicion of another crime." *State v. Wicks*, 332 Or App 67, 69, 549 P3d 49 (2024) (internal quotation marks omitted). An officer has reasonable suspicion if they "can point to specific and articulable facts that give rise to a reasonable inference that the defendant committed or was about to commit a specific crime or type of crime." *Maciel-Figueroa*, 361 Or at 165. The officer's suspicion "must be objectively reasonable in light of the totality of circumstances known to the officer." *Wicks*, 332 Or App at 70 (internal quotation marks omitted). "[A]n officer may develop reasonable suspicion or probable cause during the course of a traffic stop that may justify activities that would not have been permissible based on the original purpose of the stop." *State v. Watson*, 353 Or 768, 785, 305 P3d 94 (2013).

Having reviewed the record, we agree with the trial court that, under the totality of the circumstances, the officer had reasonable suspicion that defendant had committed the crime of PSV or UUV. By the time the officer began to search for the VIN, the officer knew the following: (1) the truck lacked license plates, (2) the trip permit on display in the truck's rear window was expired, (3) the trip permit did not look like a standard Oregon trip permit, which the officer noted before initiating the stop, (4) a man riding in the truck bed walked off as the officer approached, (5) the driver did not have a driver's license, and (6) defendant claimed ownership of the truck but had not yet insured it. Any of those facts individually would likely be insufficient to satisfy the reasonable suspicion standard. However, based on

---

[2] Article I, section 9, provides, as relevant: "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

the lack of documentation, the suspicious trip permit, the passenger in the truck bed leaving the scene, and importantly, defendant's claim to own the vehicle, the officer reasonably inferred that defendant was in possession of a stolen vehicle. We conclude that that inference was objectively reasonable, and therefore, the officer did not unlawfully extend the traffic stop by searching for the VIN.[3]

We next address defendant's argument that the officer's questions about drugs tainted defendant's arrest and led to the subsequent discovery of methamphetamine in her purse, and we conclude that the discovery of that evidence was not the product of unlawful police conduct.[4] To determine whether "the evidence that the state seeks to introduce must be suppressed because that evidence was obtained in violation of the defendant's constitutional rights," we consider the totality of the circumstances, including the temporal proximity between the misconduct and the discovery of the evidence, any intervening or mitigating circumstances, and the nature, purpose, and flagrancy of the misconduct. *State v. Unger*, 356 Or 59, 85-86, 333 P3d 1009 (2014); *see also State v. Benning*, 273 Or App 183, 194, 359 P3d 357 (2015) (summarizing the *Unger* test as a determination of whether "the violation of [the] defendant's rights had such a tenuous factual link to the disputed evidence that the unlawful police conduct cannot be properly viewed as the source of that evidence"). Here, although the officer arrested defendant shortly after asking whether there was "dope" in her purse, the officer also received confirmation from dispatch that the truck had been reported stolen close in time to the arrest. Indeed, while awaiting that confirmation, the officer's questioning focused primarily on a broken key in the ignition and the circumstances under which defendant had acquired the truck, to which defendant gave shifting answers. Defendant twice asked if she was under arrest, and the officer's responses indicate that he had not yet decided

---

[3] We need not address the state's other argument that the officer's search for the VIN was reasonably related to the original purpose of the traffic stop itself.

[4] The state does not concede that the officer's questions were unrelated to his investigation of the truck nor that those questions unlawfully expanded the scope of his investigative activities in violation of *Arreola-Botello*. It argues instead that the questioning did not taint the arrest and that suppression was not required.

whether to arrest her because his investigation of the truck was ongoing. We conclude that the record demonstrates that defendant's responses to the officer's questions about drugs were only tenuously connected to his decision to arrest her and, thus, that the officer's questioning is not the source of the disputed evidence.

Finally, we reject defendant's argument that the warrantless search of defendant's purse was not justified by the search-incident-to-arrest exception because the state did not prove actual exigency. That argument is foreclosed by precedent. *State v. Krause*, 281 Or App 143, 146, 383 P3d 307 (2016), *rev den*, 360 Or 752 (2017) (holding that a search incident to arrest conducted for the purpose of discovering evidence of the crime of arrest is not based on exigency, and thus, "a search for that purpose may be justified even if the defendant has been removed from the area in which an officer believes that evidence may be located"); *see also State v. Stevens*, 329 Or App 118, 125, 540 P3d 50 (2023), *rev den*, 372 Or 437 (2024) (declining to overrule *Krause* as plainly wrong). The trial court did not err in denying defendant's motion to suppress.

Affirmed.