Argued and submitted January 9, 2018; in Case No. 14CR31167, vacated and remanded for further proceedings; in Case No. 15CR20274, affirmed March 4, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BILLIE JO BROWNLEE,
*Defendant-Appellant.*

Polk County Circuit Court
14CR31167, 15CR20274;
A162408 (Control), A162409

461 P3d 1015

In these consolidated cases, defendant appeals a judgment of conviction for unlawful possession of methamphetamine in Case No. 14CR31167 and a judgment of conviction for first-degree failure to appear in Case No. 15CR20274. She argues that the trial court erred when it denied her motion to suppress evidence derived from the warrantless search of her backpack and the subsequent warrantless search under the lid of a scale found inside her backpack, which resulted in the discovery of methamphetamine residue. Defendant first contends that the search of her backpack was not a permissible search incident to arrest because the backpack was no longer in her immediate possession at the time of her arrest. Second, defendant contends that the subsequent search of the scale found in the backpack exceeded the lawful scope of a search incident to her arrest for theft. The state responds that the search of defendant's backpack was lawful because she had possession of it immediately prior to her arrest. As to the search of the scale, the state argues that it was permissible as a search incident to arrest for unlawful delivery of a controlled substance. *Held*: The search of the backpack was lawful under Article I, section 9, of the Oregon Constitution as a search incident to arrest for theft. However, it is not clear on what basis the trial court denied defendant's motion as to the search of the scale. Therefore, the Court of Appeals remanded the case to the trial court to clarify its ruling and make any necessary findings.

In Case No. 14CR31167, vacated and remanded for further proceedings. In Case No. 15CR20274, affirmed.

Sally L. Avera, Judge.

Morgen E. Daniels, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Susan G. Howe, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F.

Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeHoog, Presiding Judge, and DeVore, Judge, and Aoyagi, Judge.*

DeHOOG, P. J.

In Case No. 14CR31167, vacated and remanded for further proceedings. In Case No. 15CR20274, affirmed.

_____

* DeVore, J., *vice* Hadlock, J. pro tempore.

**DeHOOG, P. J.**

In these consolidated cases, defendant appeals judgments of conviction for unlawful possession of methamphetamine, ORS 475.894, and first-degree failure to appear, ORS 162.205.[1] Defendant assigns error to the trial court's denial of her motion to suppress evidence derived from searches of (1) her backpack and (2) a scale found inside her backpack, each of which defendant contends violated Article I, section 9, of the Oregon Constitution. Defendant argues that her backpack was impermissibly searched incident to her arrest because it was no longer in her immediate possession at the time of her arrest. Defendant further argues that, even if the initial search of her backpack was lawful, the subsequent search of the scale—which resulted in the discovery of methamphetamine residue—exceeded the lawful scope of a search incident to her arrest for theft. We conclude that the search of a backpack that was in defendant's possession immediately before her arrest for theft was permissible incident to that arrest. As to the search of the scale, however, it is unclear on what basis the trial court upheld the search; as a result, we are unable to determine whether the record supports the trial court's implicit factual findings or whether its ultimate ruling is legally correct. Accordingly, we vacate the judgment of conviction for unlawful possession of methamphetamine and remand to the trial court to clarify its ruling.

"We review a trial court's denial of a motion to suppress for legal error, and we are bound by the trial court's factual findings if there is any constitutionally sufficient evidence in the record to support them." *State v. Maciel-Figueroa*, 361 Or 163, 165-66, 389 P3d 1121 (2017). If the trial court did not make findings of fact on all pertinent issues and "there is evidence from which the trial court could have found a fact in more than one way, we will presume that the trial court decided the facts consistently with the trial court's ultimate conclusion." *Id*. at 166; *see also State v. Delfino*, 281 Or App 725, 727, 386 P3d 133 (2016), *rev den*,

---

[1] Although defendant filed notices of appeal as to both judgments, she challenges only her conviction for unlawful possession of methamphetamine (Case No. 14CR31167) and does not assign error to any ruling in the other case (Case No. 15CR20274). Accordingly, we affirm in Case No. 15CR20274.

361 Or 525 (2017) ("[W]e are bound by the trial court's \* \* \* necessary implicit factual findings, as long as the record includes constitutionally sufficient evidence to support those findings." (Internal quotation marks omitted.)).

In December 2014, loss-prevention officers (LPOs) at a Roth's grocery store were monitoring security cameras when they saw defendant pick up a deli item "in a bowl type container \* \* \* probably some kind of pasta or something from the deli that was served into a bowl by the deli employee and was given to her in a bowl container." Because they found it noteworthy that defendant was wearing a large jacket and carrying a backpack, the LPOs continued to monitor defendant as she walked through the store. When the LPOs saw defendant leave the store without having seen her pay for the deli item, they followed her outside and confronted her about the suspected theft. While the LPOs were on the phone with the police, defendant left the Roth's parking lot and walked towards an adjacent Jiffy Lube parking lot. The LPOs described defendant and her whereabouts to dispatch as she walked away.

Within minutes, Detective McCarley arrived in the area to investigate the incident. Dispatch had given McCarley a description of the suspect: a female in her forties, wearing a black coat and carrying a blue backpack, who had last been seen walking away from Roth's towards a nearby Jiffy Lube. When he arrived, McCarley saw defendant, who matched that description, in the Jiffy Lube parking lot. As he drove into the lot, McCarley saw defendant first throw the backpack into a fenced dumpster area and then remove her coat and set it on the ground. Based on the reports that he had received and defendant's actions upon his arrival, McCarley contacted defendant and placed her in handcuffs. At that time, McCarley knew that defendant had allegedly taken a deli item, but he had been given no further details. He testified, however, that he had envisioned "a small container."

McCarley asked defendant if she had anything in her possession that was dangerous or illegal. Defendant told McCarley that she had a marijuana pipe in her pants pocket. With defendant's consent, McCarley retrieved the

pipe from her pocket and noticed that there was burnt marijuana residue inside the bowl. McCarley then read defendant her *Miranda* rights, placed her in the back of his patrol car, and asked her what had happened. Defendant told McCarley that she had gotten a pasta salad from the Roth's deli but had put it down on a table before she left the store and was confronted by the LPOs. She also told McCarley that the backpack belonged to her and that she had thrown it over the fence because she had planned to run from him and had not realized it was merely an enclosure. Defendant told McCarley that her backpack contained more marijuana and said that McCarley could retrieve the backpack from the enclosure. Defendant also initially consented to a search of the backpack, but she withdrew that consent after McCarley retrieved the backpack. Meanwhile, the LPOs arrived. They positively identified defendant as the person they had seen taking a deli item, told McCarley that they had been unable to find the item anywhere in the store, and said that they had confirmed that defendant had not paid for it.

Based on the information he had at that point, McCarley determined that he had probable cause to arrest defendant for third-degree theft. Thus, incident to that arrest, McCarley searched defendant's backpack for evidence of theft. At that time, McCarley also believed that he had probable cause to search for marijuana based on defendant's statements and her possession of a marijuana pipe.[2] Inside the backpack, McCarley found a prescription bottle and a woman's purse. McCarley opened the pill bottle and found marijuana.[3] McCarley then opened the purse and found a small black case that he believed could have contained a deli salad; McCarley opened the case, finding a small digital gram scale and "zip lock type" plastic baggies that appeared about an inch and a half square in size. The scale inside the case was "maybe three to four inches by three to four inches and maybe half to one inch deep." The weighing surface of the scale was covered with a lid.

---

[2] At the time of defendant's arrest, possession of any amount of marijuana was unlawful, and possession of an ounce or more of marijuana was a crime. *Former* ORS 475.864 (2013), *repealed by* Or Laws 2017, ch 21, § 126.

[3] In her motion to suppress, defendant separately challenged McCarley's search of the pill container, but she does not renew that challenge on appeal.

Next, McCarley removed the cover from the scale's weight plate and discovered white powder residue on it. Based on his training and experience, he suspected that the white powder was some type of controlled substance, possibly methamphetamine or cocaine. A field test later confirmed that the substance was methamphetamine. Defendant initially told McCarley that the scale was hers, but, when McCarley showed her the powdery residue, she recanted that statement. Defendant was subsequently indicted for unlawful possession of methamphetamine and third-degree theft.

Before trial, defendant moved to suppress the evidence found inside her backpack and the statements that she had made following the search. Defendant argued that McCarley's warrantless search violated Article I, section 9, because her backpack had not been in her immediate possession when she was arrested, and because the search exceeded the lawful scope of a search incident to her arrest for theft. McCarley and the Roth's LPOs testified to the above facts at the hearing on defendant's motion to suppress. McCarley also testified that he had years of experience participating in drug investigations, during which he had investigated the use, sale, and manufacturing of drugs. As to the search of the scale in particular, McCarley testified that the small plastic baggies and scale were significant to him because,

> "given my time working in narcotics, that typically when I find that stuff in contacting somebody, especially when they already have some type of controlled substance, [that] being marijuana [here], to me that's an indicator that somebody's either in possession of more drugs *or is potentially using that as packaging for selling controlled substances*."

(Emphasis added.) When defendant asked McCarley if he "at any time develop[ed] probable cause to believe that [he] could arrest her for possession of marijuana," McCarley said that he had not. When asked specifically why he opened the scale, McCarley replied, "Given the fact that I had found marijuana, plus the clean plastic bags, I suspected there would be marijuana on the scale."

The court denied defendant's motion, ruling that McCarley had probable cause to arrest defendant for third-degree theft and that the search of her backpack was permissible as a search incident to that arrest because defendant had it in her hands before throwing it over the fence in an attempt to flee from McCarley. The court further ruled that McCarley had probable cause to search the "makeup bag" (the black case) that he found inside the purse, as well as the scale within that bag. Specifically, the trial court ruled, in part:

> "At the time that [McCarley] searched [the backpack] *** I think he had two things that he could search for. I disagree with you [defendant], when an officer is investigating the violation, even though it doesn't rise up to the level of a crime, if there is an illicit substance *** that they know about, I think they get to reach in and get that. So back when marijuana was illegal, if there was somebody smoking a joint and he said yeah I got some in my pocket, the officer gets to go in the pocket and get it.[4] And in this case, the officer was told that there was some marijuana in the backpack. At the time this was done marijuana was illegal, and so he went in to the backpack to retrieve that as well. He found that, and once he found that, I think that the case cited by the state, which is [*State v. Tallman*, 76 Or App 715, 712 P2d 116 (1985)], says he can't look for that anymore. So at the point he found the marijuana he was done searching for marijuana. And I think that he probably was at that point. He testified he found a purse, inside the purse he found what I'm calling a makeup bag. That's not what he named it. That's what I'm calling it. He testified that he looked into the makeup bag because it was large enough that it could have held a salad. When he looked in that he saw baggies and he saw a scale. And at that point he testified he had probable cause to believe that there would be more marijuana found on the scale. *** I do believe at that point he had subjective and objective belief that there would be drugs on that scale. *** I do believe that the search was a lawful search and I decline to suppress it."

---

[4] As noted, defendant consented to McCarley's retrieval of the marijuana pipe from her pocket, and she does not contest that action on appeal. Further, although the trial court's theory as to why McCarley was permitted to search defendant's backpack is somewhat unclear, the parties focus their attention on whether that search was lawfully conducted incident to defendant's arrest for third-degree theft. Accordingly, we do the same.

Following the denial of her motion to suppress, defendant waived her right to a jury trial on the unlawful possession of methamphetamine charge and proceeded to a stipulated facts trial. The court dismissed the third-degree theft charge on the state's motion and found defendant guilty of unlawful possession of methamphetamine. Defendant appeals the resulting judgment of conviction.

On appeal, defendant makes two arguments in support of her assertion that the court erred in denying her motion to suppress. First, defendant argues that McCarley's initial search of her backpack was not a permissible search incident to arrest because the backpack was not in her immediate possession at the time of her arrest. The state responds that McCarley's search of defendant's backpack was lawful because defendant had possession of the backpack immediately prior to her arrest and a search of property immediately associated with an arrestee is lawful under the search-incident-to-arrest exception to the warrant requirement.

Second, defendant argues that, even if McCarley's search of her backpack was lawful, his subsequent examination of the scale's weight plate was impermissible for two reasons: (1) the space between the plate cover and the weighing surface of the scale was not reasonably likely to contain evidence relating to defendant's arrest for theft; and (2) McCarley did not have probable cause to arrest defendant for unlawful possession of a controlled substance until *after* he had searched under the scale's cover and found what he suspected to be cocaine or methamphetamine, making the search impermissible as a search incident to arrest for possession. The state does not dispute either of defendant's contentions. Instead, the state posits that the search of the scale was permissible as a search incident to arrest, not for theft or *possession*, but for a different criminal offense: unlawful *delivery* of a controlled substance. That is, the state argues that McCarley's discovery of the scale and multiple zip-lock baggies, together with the marijuana in defendant's possession, gave him an objectively reasonable basis to believe that examining the scale's weighing surface would disclose evidence that she had committed the crime of delivery of a controlled substance; thus, the state contends

the search was lawful as incident to an arrest for that offense.

For the reasons that follow, we agree with the state that the search of the backpack was lawful under Article I, section 9, but vacate as to evidence seized from the scale and remand to the trial court to clarify its ruling.

Article I, section 9, provides that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]" "Under that section, a search conducted without a warrant is deemed unreasonable unless it falls within one of the few specifically established and carefully delineated exceptions to the warrant requirement." *State v. Mazzola*, 356 Or 804, 810, 345 P3d 424 (2015) (internal quotation marks omitted). The burden is on the state to show that the circumstances existing at the time were sufficient to satisfy an exception. *State v. Baker*, 350 Or 641, 647, 260 P3d 476 (2011). One such exception exists for searches conducted "incident to arrest." *Mazzola*, 356 Or at 811.

An officer may lawfully search an arrestee without a warrant for three purposes: "(1) to protect a police officer's safety; (2) to prevent the destruction of evidence; or (3) to discover evidence of the crime of arrest." *Id.* Whatever the purpose, a search incident to arrest must be reasonable in scope, time, and intensity, and any search for evidence must relate to the crime for which there is probable cause to make an arrest. *Id.* at 811-12. Here, defendant does not dispute that McCarley had probable cause to arrest her for theft; she contends, however, that McCarley's search of the backpack exceeded the permissible scope of a search incident to her arrest because she was not in "immediate possession" of the backpack at the time he arrested her. In essence, defendant argues that, by dispossessing herself of the backpack by tossing it over a secure fence just before McCarley contacted and arrested her, she succeeded in removing the backpack from the scope of a lawful search incident to arrest. We disagree.

Defendant's argument is premised on our statement in *State v. Hite*, 198 Or App 1, 7, 107 P3d 677 (2005), that, "[w]here the search is for evidence related to the crime

of arrest, the scope of a permissible search is limited to the arrestee's person and to the belongings in his or her *immediate possession* at the time of arrest." (Emphasis added.) However, neither the Supreme Court's decision in *State v. Owens*, 302 Or 196, 729 P2d 524 (1986), on which *Hite* relied, nor our own case law, including *Hite*, compels the conclusion that McCarley's search of defendant's backpack exceeded the lawful scope of a search incident to arrest.

In *Owens*, a police officer investigating an alleged act of shoplifting contacted the defendant at a Payless Drug Store, where a security officer had seen her place several small items in her purse without paying for them. *Id*. at 198. By the time the police officer arrived, the defendant had admitted to shoplifting. *Id*. Although she had already removed the known stolen items from her purse, the officer insisted that she empty out its remaining contents. *Id*. The defendant's compliance with that demand led to the discovery of evidence of drug possession, for which the defendant later was charged. *Id*. at 198-99.

On review, the Supreme Court considered whether compelling the defendant to empty out her purse fell within the lawful scope of a search incident to her arrest for shoplifting. *Id*. at 199-200. The court explained:

> "Under Article I, section 9, a search incident to arrest for crime evidence is limited to a search for evidence of the crime for which the arrestee is arrested. In order to justify a search, incidental to an arrest, the arrest must be for a crime, evidence of which reasonably could be concealed on the arrestee's person *or in the belongings in his or her immediate possession at the time of the arrest*."

*Id*. at 200 (emphasis added). Thus, the language in *Hite* that defendant relies on in this case directly echoes the Supreme Court's opinion in *Owens*. Notably, however, the *Owens* court hinted that "immediate possession" was not necessarily synonymous with "in his or her hands," as defendant's argument here suggests. Specifically, in regard to the search of an arrestee's belongings—as opposed to his or her person— the Supreme Court stated:

> "[T]he Oregon Constitution authorizes the meticulous investigation of closed containers, such as wallets, purses, cigarette

cases and other personal 'effects,' found *on or immediately associated with* the arrestee, but only when it is reasonable to believe that evidence of a crime for which the person was arrested could be concealed there. The authority to search the person incident to a lawful custodial arrest rests upon what is known about the crime and the arrestee. The test is the reasonableness of the search in light of the circumstances of the particular case."[5]

*Id*. at 202 (emphasis added). By distinguishing items found "on" an arrestee from those "immediately associated with" the arrestee, the Supreme Court suggested an understanding that the lawful scope of a search incident to arrest was not necessarily limited to items being held or carried by an arrestee at the time of arrest; they need only be "immediately associated with" the arrestee at that time.

In light of that distinction, we have, as the state notes, consistently upheld searches incident to arrest of property "immediately associated with—but not in the immediate possession [or at least not in the hands or on the person]—of an arrestee at the time of arrest." For example, in *State v. Burgholzer*, 185 Or App 254, 259-60, 59 P3d 582 (2002), we upheld as lawful a search of a cigarette pack incident to the defendant's arrest for driving under the influence of a controlled substance. When the police stopped the defendant in that case, he had a cigarette in his mouth and a pack of cigarettes was located between the driver's seat and the center console. *Id.* at 260. We upheld the search because the pack "was plainly within [the] defendant's immediate possession *shortly before* the arrest and, consequently, could be said to have been *intimately associated with* [the] defendant at the time of his arrest." *Id.* (emphases added); *see also State v. Lander*, 137 Or App 222, 227, 903 P2d 903 (1995), *rev den*, 323 Or 114 (1996) (upholding the search of a

---

[5] The court also noted that

"the search of 'effects' found on or carried by the arrestee is authorized even after these 'portable repositories' of personal effects have been removed from the arrestee's immediate control and are under the exclusive control of the police at the time of the search. It is enough that the arrestee had the personal effects in his or her possession at the time of the arrest; the police are not required to show that the arrestee retained possession at the time of the search."

*Id*. (citing *State v. Caraher*, 293 Or 741, 759, 653 P2d 942 (1982)).

motel room air conditioning unit when officers had reason to believe the defendant had been tampering with the unit just before his arrest); *State v. Hartley*, 96 Or App 722, 726, 773 P2d 1356, *rev den*, 308 Or 331 (1989) (car trunk was lawfully searched incident to the defendant's arrest when officers had seen the defendant close trunk just before his arrest); *State v. Askay*, 96 Or App 563, 567-68, 773 P2d 785, *rev den*, 308 Or 197 (1989) (upholding the search of a rolled-up brown paper bag that the defendant had handed to another person immediately prior to arrest).

Indeed, we have held that a search incident to arrest for evidence of the crime of arrest can comport with Article I, section 9, "even though [at the time of arrest] the defendant no longer has control over the area searched." *State v. Krause*, 281 Or App 143, 146, 383 P3d 307 (2016), *rev den*, 360 Or 752 (2017) (upholding search of Altoids tin found in the defendant's van after she had stepped out of vehicle and after officers had developed probable cause to arrest her for a drug crime). As long as evidence of the crime of arrest could reasonably be found in the area or container searched, our focus is on whether the search is "otherwise reasonable in time, scope, and intensity." *Id.*; *see State v. Washington*, 265 Or App 532, 537, 335 P3d 877 (2014) ("A search is reasonable in scope and intensity if it is sufficiently close in space to the arrest; that is, if it is confined to the area that was in the immediate control of the suspect at the time of the arrest[.]" (Internal quotation marks omitted.)); *see also State v. Hernandez*, 299 Or App 544, 551, 449 P3d 878 (2019) (search also must occur within a short time of arrest to be reasonable).

As the foregoing cases reflect, whether a search incident to arrest is reasonable in scope and intensity is *not* dependent on an arrestee's immediate possession of the item or area searched, at least not in a way that would require the state to show that the arrestee was holding or carrying a searched item at the exact moment of arrest; what matters for those purposes is whether the item or area searched was *immediately associated with* the arrestee at that time. *Burgholzler*, 185 Or App at 260. Viewed in light of those cases, *Hite*, as the trial court understood, is distinguishable. In *Hite*, officers responded to a report that a stolen

vehicle was parked outside a restaurant. 198 Or App at 3. Upon arriving at that location, one officer saw the defendant walking away from the reportedly stolen car and heading towards the restaurant. *Id.* The officers blocked the car and entered the restaurant, where they arrested the defendant for unauthorized use of a vehicle (UUV). *Id.* Based on that arrest, the officers then searched the car for evidence of UUV, such as pry bars, screwdrivers, and "shaved" keys. *Id.* at 4. In the course of their search, the officers found backpacks in the trunk of the car and proceeded to search those, which led to the discovery of contraband that gave rise to additional charges. *Id.* at 3-4. On appeal following the denial of the defendant's motion to suppress, we held that the search of the backpacks had been unlawful. *Id.* at 7-8. Although we acknowledged that the backpacks reasonably could have contained evidence related to UUV, "they were not within [the] defendant's control at the time of the arrest" and therefore were outside the scope of a lawful search incident to arrest. *Id.* As we explained, the "[d]efendant was arrested inside the restaurant, so any search was limited to [the] defendant's person and the belongings in his immediate possession inside the restaurant." *Id.* (citing *State v. Walker*, 113 Or App 199, 204, 830 P2d 633, *rev den*, 314 Or 574 (1992) (search of a car not justified as a search incident to arrest when the defendant was arrested half a block away from the car)).

Defendant's connection to the backpack that McCarley searched in this case was very different from any connection that the defendant in *Hite* was shown to have to the backpacks at issue in that case. Here, McCarley responded to a report of a theft and had specifically been told that the suspect was carrying a backpack. When he arrived at the scene, McCarley observed defendant carrying a backpack, but, as he approached her, she tossed it over a fence. Unlike the defendant in *Hite*, who, before his arrest, had not been seen inside the car, accessing the trunk of the car, or holding the backpacks that the police ultimately searched, 198 Or App at 3, McCarley saw defendant directly exercising control over the backpack immediately before he arrested her. *See id.* at 7 (controlling circumstance was whether backpacks were "within [the] defendant's control"

at the time of his arrest). Given those factual distinctions, *Hite* does not control the outcome here.

Notably, in this case defendant was *both* "immediately associated with" *and* in "immediate possession of" the searched items just before her arrest. That is, this is not a case in which the police find a person in one location and property that is believed to belong to the person in another location. Even though defendant had tossed her backpack into a fenced enclosure before McCarley reached her and therefore no longer had it under her physical control, McCarley had seen her carrying the backpack immediately before he detained her; indeed, he had seen her throwing it over the fence. Therefore, the backpack remained immediately associated with defendant at the time of her arrest. Given that the LPOs from Roth's, where defendant was suspected to have committed a theft, had seen her carrying the same backpack, it was reasonable for McCarley to believe that searching the backpack would disclose evidence of the alleged theft. Soon after arresting defendant, McCarthy retrieved the backpack and proceeded to search it for that evidence. Under those circumstances, McCarley's search of the backpack was reasonable in time, scope, and intensity, and, therefore, permissible as a search incident to arrest.

We turn to defendant's second argument, that, even if McCarley's initial search of the backpack was valid as a search incident to arrest, his subsequent examination of the scale's weight plate was not. Defendant argues that the second search was invalid because (1) the space enclosed between the lid covering the weighing surface of the scale and the weight plate itself was not large enough to make it reasonably likely to contain evidence relating to the theft for which she had been arrested and (2) McCarley did not separately develop probable cause to arrest her for possession of a controlled substance until after he had searched the scale, thus the search cannot be upheld as a valid search incident to arrest for *that* crime. For its part, the state does not directly confront defendant's argument that the examination of the scale was not a valid search incident to her arrest for theft or possession of a controlled substance. Rather, as noted, the state argues that, by the time McCarley removed the scale's

cover and examined its weighing surface, he had developed probable cause justifying a search incident to an arrest of defendant for a third crime, namely, unlawful *delivery* of a controlled substance.[6]

Defendant does not dispute that, if McCarley had probable cause to arrest her for delivery of a controlled substance, his search beneath the scale's plate cover was both likely to disclose evidence of that crime and reasonable in time, scope, and intensity. Moreover, defendant does not appear to argue that, if the trial court ruled that McCarley had the subjective and objectively reasonable belief that defendant was engaged in unlawful delivery of a controlled substance, the record could not support that ruling.[7] Instead, defendant takes another approach altogether. During oral argument on appeal, defendant observed that, in the trial court, the state had focused its argument on *possession* of a controlled substance, and so had not fully developed a probable cause argument related to *delivery*. Thus, defendant contends, we should not consider that argument on appeal.

We agree with defendant that the state's delivery theory does not provide us with grounds to affirm the court's ruling as to the search of the scale, but, as we will explain, not solely because the state failed to fully develop that argument in the trial court. Rather, we conclude that

---

[6] As defendant observes, an officer cannot arrest a person for committing a violation; relatedly, a detention to investigate a violation does not carry with it the same authority to search that an arrest supported by probable cause does. *See* ORS 153.039 (permitting officers to stop and detain persons suspected of violations to allow for a reasonable investigation, but not authorizing arrests); *see also Tallman*, 76 Or App at 718 (discussing *former* ORS 133.072 (1985), *renumbered as* ORS 153.039 (1999)). At the time of defendant's arrest in late 2014, possession of less than an ounce of marijuana was a violation, while possession of more than an ounce was a criminal offense. *Former* ORS 475.864 (2013). However, McCarley testified that he did not have probable cause *at any time* to arrest defendant for possession of marijuana. Given his testimony, it is clear—and undisputed by the state—that McCarley did not have subjective probable cause to arrest defendant for that offense. However, at the time of defendant's arrest, *delivery* of marijuana remained a criminal offense. *Former* ORS 475.860 (2013), *repealed by* Or Laws 2017, ch 21, § 126.

[7] *See, e.g.*, *State v. Pollock*, 337 Or 618, 622-23, 102 P3d 684 (2004) (to establish probable cause to arrest a person, the state must establish both that (1) the arresting officer subjectively believed that a specific crime had been committed and that, as a result, a person or thing was subject to seizure; and (2) the officer's belief was objectively reasonable under the circumstances).

the state's failure to meaningfully argue to the trial court that McCarley had probable cause to search for evidence of delivery led to an unclear ruling, which may or may not be supported by the record created at the suppression hearing. As a result, we are unable to determine whether the court's ruling was erroneous. Thus, under the unique circumstances of this case, we conclude that it is appropriate to vacate and remand, so that the trial court can clarify the basis of its ruling.

In her written motion to suppress, defendant argued, as she does on appeal, that McCarley's search of the scale could not be upheld as a search incident to arrest for either theft or possession of a controlled substance. In its written response to defendant's motion, the state did not raise a delivery argument; rather, it argued only that, contrary to defendant's view, McCarley had probable cause to arrest her for possession *before* searching the scale. Not surprisingly, at the ensuing hearing, both the court and the parties focused most of their comments on defendant's possession of marijuana and McCarley's various searches and discoveries related to that possession.

McCarley, on the other hand, provided testimony that reasonably can be viewed as directed towards the crime of possession, the crime of delivery, or both. Specifically, as noted above, McCarley testified that, in light of his experience working narcotics, the items that he had found before searching the scale had led him to believe either that there were "more drugs" in defendant's possession, or that those items were being used as "packaging for selling controlled substances," *i.e.*, unlawful delivery of controlled substances. In the closing argument that followed, the state was similarly equivocal. Rather than arguing that it had established that McCarley had probable cause to arrest and search defendant for evidence of a specific crime, the state vaguely contended that McCarley had probable cause to search the scale for "a controlled substance offense."

The trial court, unfortunately, does not appear to have recognized the ambiguity arising from McCarley's testimony and the state's related argument. And, as a result, the court did not resolve that ambiguity; indeed, it arguably

exacerbated it. In its ruling denying defendant's motion to suppress the evidence McCarley found on the scale, the court explained:

> "When [McCarley] looked in [the black case] he saw baggies and he saw a scale. And at that point he testified he had probable cause to believe that there would be more marijuana found on the scale. * * * I do believe at that point he had subjective and objective belief that there would be drugs on that scale. * * * I do believe that the search was a lawful search and I decline to suppress it."

In ruling that McCarley had a "subjective and objective belief that there would be drugs on [the] scale," the trial court did not indicate whether, in its view, McCarley had probable cause related to possession, delivery, or both.[8] Arguably, because the court purported to find that McCarley had probable cause regarding a fact—that is, "that there would be drugs on [the] scale"—as opposed to a crime, it failed to find probable cause as to *either* crime. However, that appears unlikely to have been the court's intent, as it ultimately denied defendant's motion to suppress.

That leaves us at an impasse. As discussed above, a search incident to arrest is valid where an officer has probable cause to make an arrest, the search would likely uncover evidence of the crime of arrest, and the search is reasonable in time, scope, and intensity. *Mazzola*, 356 Or at 811-12; *see also State v. Miller*, 345 Or 176, 184-85, 191 P3d 651 (2008) (discussing warrantless arrest provisions found in ORS 133.310(1)). The trial court in this case evidently intended to find that McCarley had probable cause to arrest and therefore search defendant for a controlled substance offense that, in the court's view, justified McCarley's search of the scale's weighing surface. Finally, McCarley's testimony that he associated the items that he had found with packaging and delivering controlled substances could, at least arguably, support a finding that he subjectively believed that he had grounds to arrest defendant for delivery. We conclude,

---

[8] In other words, in ruling that there was "probable cause to believe" that there would be "more marijuana" on the scale, the court could have considered that further evidence of possession, evidence of unlawful delivery of marijuana (by preparing it for delivery), or both.

however, that we cannot resolve defendant's appeal on that ground.

To explain why that is so, we reiterate that, in order to uphold McCarley's search of the scale, the trial court was required to find that McCarley subjectively believed that defendant had committed the crime of delivery of a controlled substance. Here, despite our recognition that McCarley's testimony was arguably sufficient to make that finding, we cannot assume that the court did so here. That is, this is not a case in which we can infer that the trial court made findings in accordance with its ultimate ruling, so long as there is evidence in the record to support those findings. *See, e.g.*, *Maciel-Figueroa*, 361 Or at 166 (if "there is evidence from which the trial court could have found a fact in more than one way, we will presume that the trial court decided the facts consistently with the trial court's ultimate conclusion"). And that is because the court's ultimate ruling itself is far from clear. To the extent that we can glean the court's intent to uphold McCarley's search on the ground that he had probable cause to arrest defendant for delivery, we can do so only because McCarley's testimony can be viewed as suggesting that ground. To rely on that inferred ground for the court's ruling to further infer that it made the factual findings necessary to support that ruling is to engage in circular reasoning in the extreme. We decline to undertake that exercise here.

Collectively, the testimony presented at the hearing on defendant's motion to suppress, the arguments that the parties made, and the trial court's somewhat cryptic ruling stymie our efforts to fully address the trial court's ruling. That is, because we do not know on what ground the trial court denied defendant's motion, we cannot determine whether it did so in error. Given those unique circumstances, we conclude that the appropriate disposition is to remand this case to the trial court so that it can clarify its ruling and, as may be appropriate, make any necessary findings. *See State v. Lawson*, 300 Or App 292, 303, 454 P3d 20 (2019) (stating that trial court should resolve factual issues in the first instance as to whether officer had subjective probable cause regarding a defendant's violation of statute).

In sum, the warrantless search of defendant's backpack was justified as a search incident to her arrest for theft and did not exceed the permissible scope, time, or intensity of such a search. Accordingly, the trial court did not err in denying defendant's motion to suppress based on defendant's argument that she did not have "immediate possession" of the backpack. However, we vacate the judgment of conviction for possession of methamphetamine and remand to the trial court with instructions to clarify the basis of its ruling as to the search of the scale and, if necessary, make additional findings of fact. If, following that exercise, the court remains of the view that McCarley's search of the scale was supported by probable cause, the court may reinstate the judgment of conviction. If, on the other hand, the trial court determines that McCarley lacked either subjective or objectively reasonable probable cause to search the scale, the court should grant defendant's motion to suppress the evidence discovered on the surface of the scale and proceed accordingly.

In Case No. 14CR31167, vacated and remanded for further proceedings. In Case No. 15CR20274, affirmed.