Argued and submitted August 5, 2020, affirmed February 24, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JULIE ANN SCOTT,
*Defendant-Appellant.*

Washington County Circuit Court
18CR23233; A169340

505 P3d 1007

Defendant appeals from a judgment of conviction for second-degree theft and identity theft, raising two assignments of error. She argues that the trial court erred by denying her motion to suppress evidence found in her purse because police conducted a warrantless search that was not justified by any exception to the warrant requirement. She also argues that the trial court erred by denying a separate motion to suppress statements that she made to police, arguing that she invoked her right to remain silent and her right to counsel. *Held*: The warrantless search of defendant's purse was a permissible search incident to arrest, and defendant's statements were not invocations of her right to remain silent or to counsel. Accordingly, the trial court did not err in denying the motions to suppress.

Affirmed.

Theodore E. Sims, Judge.

Morgen Daniels, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Christopher A. Perdue, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

POWERS, J.

Affirmed.

**POWERS, J.**

Defendant challenges her convictions for second-degree theft and identity theft, raising two assignments of error. First, she asserts that the trial court erred by denying her motion to suppress evidence found in her purse, arguing that the police conducted a warrantless search that was not justified by any exception to the warrant requirement. Second, she asserts that the trial court erred by denying a second motion to suppress statements that she made to the police, arguing that she unequivocally invoked her right to remain silent and her right to counsel, and that, alternatively, she made an equivocal invocation that required the police to clarify her intent. For the reasons that follow, we conclude that the trial court did not err in denying the motions to suppress because the search of her purse was permissible under the search incident to arrest doctrine and further conclude that defendant did not invoke her right to remain silent or to counsel. Accordingly, we affirm.

We review the denial of a motion to suppress for errors of law, and we are bound by the trial court's findings of fact so long as they are supported by constitutionally sufficient evidence in the record. *State v. Maciel-Figueroa*, 361 Or 163, 165-66, 389 P3d 1121 (2017). Where the trial court did not make express findings and there is evidence in the record from which a finding could have been decided in more than one way, we will presume that the court decided the facts consistently with its ultimate conclusion. *Id.* at 166. We describe the facts in a manner consistent with those standards.

Defendant was arrested following a report of theft from a Home Depot in Beaverton. Loss prevention officers reported to police that a woman wearing a pink jacket and pink hat, along with a man, had stolen power drill kits and were driving away from the store in a red Honda Civic with mismatched license plates. Beaverton police responded, found a car matching that description, and initiated a "high-risk stop" where multiple police cars responded, and officers removed the vehicle's occupants one at a time at gun point. Defendant, who was in the right-front passenger seat, was ordered out of the car, handcuffed, and placed in the back of

a patrol car. An officer informed her of her *Miranda* rights, which she confirmed that she understood.

After police removed all four occupants of the car, Beaverton Police Officer Buelt searched the car and documented items found inside. In the back seat, he found two new DeWalt power tools with security tags still attached and stickers indicating that they came from the nearby Beaverton Home Depot, and he found a black backpack containing new, unopened Ring doorbell cameras. In the center console and near the driver's seat, Buelt found a long flathead screwdriver, a Leatherman-style tool, and a mini wrench. In the car's trunk, Buelt found additional items, including a Milwaukee brand tool set from a Home Depot in Sherwood. On the front passenger side, where defendant had been riding, Buelt found a pink baseball cap and pink or red clothing. On the passenger side floorboard, he found a new, unopened DeWalt power tool sitting next to a beige-colored leather purse.

Buelt photographed the purse on the passenger side floorboard. The top of the purse was open and another box was visible inside the purse, but Buelt was unable to recall any more details about the box when he testified at the suppression hearing. Buelt had investigated thefts from Home Depot before and knew that Home Depot sold small items that shoplifters could conceal in purses and other bags, so while Buelt searched the black backpack, another officer searched the purse to see if it contained additional stolen merchandise or information that would identify defendant. Inside the purse, police found a driver's license belonging to Spacek, whom officers thought resembled defendant and initially mistook for defendant.

Before questioning defendant, Buelt spoke with the Home Depot loss prevention officer, who confirmed that the three DeWalt tool kits found in the car belonged to the Beaverton Home Depot. Buelt then questioned defendant. He began by confirming with defendant that she had been advised of her *Miranda* rights and that she understood her rights. Buelt then explained that his goal was to return the property to the businesses that they came from and told defendant that, "Everybody makes mistakes, and everybody wears silly hats, especially when they're drug-driven." He

asked defendant if she was a heroin user. Defendant said no and asked if she looked like a heroin user. Buelt replied that she did not and told her that she seemed happy and upbeat.

Buelt then told defendant that the three DeWalt tool sets came from the Beaverton Home Depot, but that he knew that another tool set found in the car came from the Sherwood Home Depot. He also said he found two Ring door-bell cameras in a backpack in the back of the car and asked who the backpack belonged to, and defendant responded that she was not sure. Buelt asked if the Ring cameras came from Home Depot, and defendant said that she was not sure and that she did not "even know what a Ring is." Buelt explained that it was a type of doorbell camera and asked again if defendant knew where they came from, and defendant reiterated that she did not know.

As captured by Buelt's body camera, defendant and Buelt then engaged in the following conversation:

"OFC. BUELT:   Okay. Do you have anything to say about today?

"[DEFENDANT]:   I'm sorry.

"OFC. BUELT:   Okay. Sorry for what?

"[DEFENDANT]:   For taking something that didn't belong to me.

"OFC. BUELT:   Okay.

"[DEFENDANT]:   I know it's wrong.

"OFC. BUELT:   So at this store here? What—

"[DEFENDANT]:   I won't admit to anything.

"OFC. BUELT:   Well, you just did. Hear me out. You know what? If you—

"[DEFENDANT]:   Should I ask for a lawyer? For—

"OFC. BUELT:   If you ask for an attorney, then we're done talking, okay.

"But that's your legal right to do that. But if you want to talk to me without a lawyer, that's fine. You just already admitted that you're sorry for taking things that didn't belong to you.

"[DEFENDANT]:   I am sorry[.]"

Buelt then explained that he liked people who took responsibility for their actions, gave an example, and asked defendant if she wanted to speak with him. Defendant said, "I'll talk to you," and then went on to make incriminating statements about her involvement in the theft. The trial court found that defendant was "remarkably calm and in control of herself" during the interview.

Defendant was charged with first-degree theft and eight counts of identity theft. Before trial, defendant moved to suppress both evidence found in her purse and her statements to police, asserting, among other arguments, that the search of her purse was not a search incident to arrest and that her statements were elicited in violation of her right to counsel and her right against self-incrimination. The trial court denied defendant's motion to suppress evidence with respect to the search of her purse, ruling that the search was lawful under the exception to the warrant requirement of search incident to arrest. The trial court also denied defendant's motion to suppress the statements that she made to Buelt.[1]

After the court's ruling on the suppression motions, the parties proceeded to a stipulated facts trial, and the trial court found defendant guilty of second-degree theft based on defendant's admissions and guilty of identity theft based on defendant's possession of Spacek's driver's license.[2] Defendant timely initiated this appeal. As explained below, we agree with the trial court's ruling that the search of

---

[1] The trial court granted defendant's motion to suppress evidence found inside her backpack during a jail inventory search, which resulted in seven counts of identity theft being dismissed. That ruling is not at issue in this appeal.

[2] Before arguing the suppression motions regarding the search of defendant's purse and her statements, the state informed the trial court that it was proceeding on a second-degree theft charge, as a lesser included offense of the first-degree theft charge. The record reflects that the trial court found defendant guilty of second-degree theft and that the trial court was sentencing defendant for second-degree theft, rather than first-degree theft. Initially, the trial court entered a judgment that included a conviction for first-degree theft; however, the next day, the trial court entered an amended judgment to reflect the conviction for second-degree theft. Although defendant's notice of appeal attached the original, incorrect judgment, there was sufficient information in the text of the notice of appeal to identify that defendant was appealing from the amended judgment. *See generally*, *Crainic v. Multnomah Cty. Adult Care Home Program*, 190 Or App 134, 137, 78 P3d 979 (2003) (explaining that if a notice of appeal contains sufficient information to identify the judgment from which the appeal is being taken, attaching an incorrect order or judgment to a notice of appeal is not controlling).

defendant's purse was justified as a search incident to arrest and that defendant did not invoke her right to remain silent or to counsel.

Under Article I, section 9, of the Oregon Constitution, a warrantless search is *per se* unreasonable unless it falls within one of the few specifically established and carefully delineated exceptions to the warrant requirement.[3] *State v. McCarthy*, 369 Or 129, 141, 501 P3d 478 (2021). If a warrantless search occurs, the state must show that circumstances existing at the time of the search were sufficient to satisfy an exception. *State v. Brownlee*, 302 Or App 594, 602, 461 P3d 1015 (2020).

One such exception exists for searches conducted "incident to arrest." *State v. Mazzola*, 356 Or 804, 811, 345 P3d 424 (2015). An officer may lawfully search an arrestee without a warrant for three purposes: (1) to protect a police officer's safety; (2) to prevent the destruction of evidence; or (3) to discover evidence of the crime of arrest. *Id*. Only the third purpose—discovery of evidence of the crime of arrest—is at issue here.

The search incident to arrest exception does not justify an exploratory seizure of everything in the defendant's immediate possession and control based on the prospect that further investigation might reveal that some of the items were stolen or are contraband. *State v. Owens*, 302 Or 196, 204-05, 729 P2d 524 (1986). Rather, the search incident to arrest for evidence of the crime of arrest is constrained by three factors: (1) the crime of arrest, (2) the nature of the evidence establishing that crime, and (3) whether the location searched could reasonably be understood to conceal such evidence. *State v. Ramirez*, 305 Or App 195, 214, 468 P3d 1006 (2020). The search for evidence related to the crime for which the defendant was arrested must be reasonable in time, scope, and intensity. *Id*. at 215. As we have explained:

> "A search is reasonable in time if it occurs immediately after a defendant's arrest. A search is reasonable in scope

---

[3] Article I, section 9, provides, in part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

and intensity if it is sufficiently close in space to the arrest, and extends into areas where the instrumentalities or fruits of the crime could reasonably be concealed, not just could possibly be concealed."

*Id*. (citations, quotation marks, brackets, and emphasis omitted).

In a search incident to an arrest, officers may open a closed container "if evidence of the crime of arrest reasonably could be concealed in that container."[4] *State v. Washington*, 265 Or App 532, 537, 335 P3d 877 (2014). As the Supreme Court has explained, "the Oregon Constitution authorizes the meticulous investigation of closed containers, such as wallets, purses, cigarette cases and other personal 'effects,' found on or immediately associated with the arrestee, but only when it is reasonable to believe that evidence of a crime for which the person was arrested could be concealed there." *Owens*, 302 Or at 202.

At issue here is whether it was reasonable to believe that evidence of the crime of arrest could be concealed in defendant's purse. Defendant asserts that the search was unreasonable in scope, arguing that the only permissible search incident to her arrest would be for the specific items that the Home Depot loss prevention officers reported that she had stolen—power tool kits—which she suggests were too large to be concealed inside a purse. The state remonstrates that it was reasonable for police to search defendant's purse because it could contain evidence of theft from Home Depot. We conclude that the search of the purse was reasonable and thus a permissible search incident to arrest.

It was reasonable for police to believe that the purse contained items stolen from Home Depot. Defendant was arrested for the crime of theft from Home Depot and evidence of theft, such as stolen merchandise, could reasonably have been concealed within the purse. The crime of arrest was not as granular as defendant's argument appears to

---

[4] Although the top of defendant's purse was open, the parties' arguments focus on the cases governing closed containers, and we likewise analyze the purse as a closed container. *See generally*, *State v. Barker*, 271 Or App 63, 348 P3d 1138 (2015) (observing that the defendant had a privacy interest in her open purse).

suggest. That is, because defendant was arrested for theft from Home Depot, not merely theft of large power tools, we conclude that evidence of that crime could reasonably have been concealed in the purse. Although the trial court did not make express factual findings about the purse's size, it stated that there was "undisputed testimony that there are lots of items—valuable items—sold by Home Depot that would easily fit * * * inside that purse[.]" Evidence before the trial court showed that a DeWalt box was leaning against the purse and that the open purse contained a boxed item. Buelt testified that he could see a box inside the purse, and that police had looked inside the purse "[t]o see if there [were] any other additional items in there" as well as to "find identifying information." Under these circumstances, which include defendant's arrest for theft from Home Depot, the presence of a box inside the open purse, the purse's proximity to a stolen power tool, and the trial court's finding that items sold by Home Depot would easily fit inside the purse, we conclude that it was reasonable to believe that a search of defendant's purse would disclose evidence of theft. Accordingly, the trial court did not err in denying defendant's motion to suppress evidence found inside the purse.

Turning to the denial of defendant's motion to suppress her statements, Article I, section 12, of the Oregon Constitution establishes a right against compelled self-incrimination.[5] To protect that right, police must give *Miranda* warnings to a suspect who is in custody or otherwise compelling circumstances. *State v. McAnulty*, 356 Or 432, 454, 338 P3d 653 (2014), *cert den*, 577 US 829 (2015). If a suspect unequivocally invokes his, her, or their right against compelled self-incrimination during a custodial interrogation, then police must honor that request and stop the interrogation. *State v. Nichols*, 361 Or 101, 107, 390 P3d 1001 (2017). "When the defendant makes an ambiguous or equivocal invocation of rights under Article I, section 12, however, the police are required to ask follow-up questions to clarify what the person meant before proceeding with

---

[5]  Article I, section 12, provides, in part, "No person shall * * * be compelled in any criminal prosecution to testify against himself."

interrogation." *State v. Avila-Nava*, 356 Or 600, 609, 341 P3d 714 (2014).

To determine if defendant made an unequivocal or equivocal invocation, or neither, we consider a defendant's words "in the context of the totality of circumstances existing at the time of and preceding their utterance, to determine whether a reasonable officer would have understood that the defendant was invoking that right." *Id.* at 613. The totality of circumstances may include "the preceding words spoken by the defendant and the interrogating officer, the demeanor, gestures, and speech patterns of the defendant, the demeanor and tone of the interrogating officer, and the point at which the defendant allegedly invoked the right to remain silent." *Id.* at 614. An invocation is equivocal if the defendant's statement or request is subject to more than one reasonable interpretation. *State v. Roberts*, 291 Or App 124, 132, 418 P3d 41 (2018).

A defendant does not necessarily invoke the right to remain silent by refusing to answer particular questions or discuss certain subjects. *See State v. Kell*, 303 Or 89, 99, 734 P2d 334 (1987) (concluding that there was no *Miranda* violation when the defendant unequivocally asked for a lawyer before discussing certain subjects, but otherwise continued speaking to police; a defendant is "entitled to pick and choose what he wishe[s] to talk about"); *see also State v. Smith*, 310 Or 1, 10, 791 P2d 836 (1990) (concluding that the defendant had not invoked his right to remain silent when he said, "I have nothing to say" in response to a hypothetical description of how he might have killed his wife, and the defendant instead "merely exercised his right to answer some questions and not to answer others").

At issue here is whether defendant's statement, "I won't admit to anything," and her question, "Should I ask for a lawyer?" were invocations. Defendant argues that her statement, "I won't admit to anything" was an unequivocal invocation, and that alternatively, her statement and question constituted an equivocal invocation, which Buelt failed to properly clarify. The state contends that neither defendant's statement nor her question were invocations, and further that, even if they were equivocal invocations, Buelt

properly clarified whether she was invoking her rights. For the reasons that follow, we conclude that neither defendant's statement nor her question were invocations of her right to remain silent or to counsel.

We consider defendant's statement, "I won't admit to anything," and conclude that viewed in the totality of the circumstances at the time of and preceding that statement, defendant was not invoking her right to remain silent. Rather, the circumstances show that she was refusing to answer a specific question that Buelt asked in reference to the nearby Beaverton Home Depot: "So at this store here?" Buelt had already told defendant that he knew that one item was from the Sherwood Home Depot and that he was trying to determine which store the Ring doorbell cameras had come from. The statement that defendant made in response to his question referencing the Beaverton Home Depot was similar to those in *Kell* and *Smith*, where the defendants engaged with the police, but declined to answer a question about a particular or discrete topic. *See Smith*, 310 Or at 10; *Kell*, 303 Or at 99. Here, defendant spoke with Buelt about a range of topics—drug use, her demeanor, what Ring doorbell cameras were and where they had come from, and her remorse for taking things that did not belong to her—before declining to answer his question referencing the nearby store.

We consider whether defendant's question about whether she should ask for a lawyer was an invocation of her right to counsel and readily conclude that it was not. Defendant's question is materially indistinguishable from similar questions that we have concluded were not invocations. *See State v. Reed*, 299 Or App 675, 686, 452 P3d 995 (2019), *rev den*, 366 Or 382 (2020) (concluding that the defendant did not invoke his right to counsel when he asked a police officer, "Do I need a lawyer?"); *Roberts*, 291 Or App at 133 (concluding that the defendant did not equivocally invoke his right to counsel by asking, "Do I need one?" after he was read *Miranda* rights). Similar to the situation in *Roberts*, defendant's question evinces that defendant had not yet formed any intent to invoke her right to counsel and was seeking additional information from Buelt.

Accordingly, we conclude that defendant's question was not an invocation, and the trial court did not err in denying her motion to suppress her statements.

Affirmed.