Argued and submitted January 24, affirmed April 13, petition for review denied September 1, 2022 (370 Or 212)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

AMBER LOUISE EDWARDS,
aka Amber Louise Gillilane,
*Defendant-Appellant.*

Washington County Circuit Court
19CR48573; A173172

509 P3d 177

Defendant appeals her conviction for unlawful possession of heroin, challenging the denial of her motion to suppress. Defendant and her companion were observed removing items from a Salvation Army donations trailer and putting them in her companion's truck. When a sheriff's deputy arrived at the scene, they admitted to the theft and voluntarily removed a variety of items from the truck bed and walked them back to the donations trailer. The deputy searched the truck for additional stolen items. In the cab, he found a small metal box, which defendant admitted was hers. He opened the box to see if it contained any stolen items and, instead, found a small amount of heroin and drug paraphernalia. Defendant moved to suppress the evidence found in the metal box, arguing that the search was unreasonable under Article I, section 9, of the Oregon Constitution. *Held*: The court did not err in denying defendant's motion to suppress. Opening the metal box was justified as part of a search incident to arrest for theft, because the box was in defendant's immediate vicinity, and, on the particular facts, it was reasonable to believe that stolen items could be concealed in the box.

Affirmed.

Patricia Crain, Judge.

Sarah De La Cruz, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Shannon T. Reel, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, and Aoyagi, Judge, and Sercombe, Senior Judge.

AOYAGI, J.

Affirmed.

**AOYAGI, J.**

Defendant and her companion were observed stealing items from a Salvation Army donations trailer. That led to an encounter with a sheriff's deputy, during which the deputy searched defendant's companion's truck. The deputy found heroin and drug paraphernalia inside a small metal box located in the truck's cab. Defendant was subsequently convicted of unlawful possession of heroin, ORS 475.854(2)(a) (2017), *amended by* Or Laws 2021, ch 2, § 14; Or Laws 2021 ch 591, § 36. On appeal, she contends that the trial court erred in denying her motion to suppress, because the evidence was found in an unreasonable search in violation of Article I, section 9, of the Oregon Constitution. For the following reasons, we affirm.

FACTS

We review the denial of a motion to suppress for errors of law. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We are bound by the trial court's factual findings if there is constitutionally adequate evidence to support them. *Id.* We state the facts, which come almost entirely from the deputy's testimony, accordingly.

Around 8:30 p.m. on a summer night, the Washington County Sheriff's Office received two 9-1-1 calls reporting that two or three people were removing items from a Salvation Army donations trailer parked in a grocery store parking lot. At least one report included a vehicle description. A deputy drove to the location, which took about 20 minutes, and found a vehicle parked near the donations trailer that matched the description. The vehicle was an "open bed pickup truck" with "a bunch of stuff in the bed." The bed was covered by a tarp, but "stuff" was "sticking out" from under the tarp. Inside the truck's cab were "a bunch of different things," like "[b]ackpacks and random items." The area "behind the driver's and the passenger's seat was stacked with bags. Individual items of things just kind of filled up with things."

A man named Douglas was sitting in the driver's seat, while defendant was either sitting in the passenger seat or standing by the passenger door. The deputy told

them that there had been a report of "a truck matching this description" taking items from the Salvation Army donations trailer. In response, defendant and Douglas were "cooperative" and "fairly forthcoming," talked with the deputy "about the theft," and "started removing items from the back of the pickup truck and agreeing to take them back to the Salvation Army trailer." The deputy does not remember what the items were, but defendant and Douglas removed "various items" of "various sizes" from the truck bed and walked them back to the donations trailer.

At that point, the deputy believed that he had probable cause to arrest defendant and Douglas for theft. The deputy proceeded to search the truck, without a warrant or consent, looking for "additional stuff." From past experience, he knew that "people can drop off whatever they want" at a Salvation Army donation center, from "things as large as furniture down to, you know, Christmas ornaments and little—small electronics and bric-a-brac"; "it's a pretty kind of open concern as far as what gets dropped there." Given the nature of Salvation Army donations, as well as "the kind of random items that were coming out of the bed of the truck," the deputy believed that "anything inside the truck" potentially could have been taken from the donations trailer.

In the truck's cab, behind the driver's seat, the deputy found a small pink-and-purple metal box. The deputy asked who it belonged to. Defendant said that it was hers, and Douglas may have said the same. Believing that the box belonged to defendant[1] but that it could contain items stolen from the donations trailer, the deputy opened the box and found needles, small items of drug paraphernalia, and a usable amount of heroin. After *Mirandizing* her, the deputy asked defendant about the contents of the box, and she admitted that it was her "kit" and that it contained a

_____

[1] When asked whether he knew who the metal box belonged to when he found it, the deputy testified that he did not know "before [he] asked." To the extent that the state argues for the first time on appeal that the box itself could have been stolen, that is inconsistent with the deputy's testimony. The deputy never suggested that he disbelieved that the box belonged to defendant, and he implicitly acknowledged his belief that it did belong to her, by indicating that he knew who it belonged to once he asked. Our understanding of the deputy's testimony also is consistent with the trial court's ruling.

"teener" of heroin, which the deputy understood to mean $10 worth of heroin.

Defendant was charged with unlawful possession of heroin. She moved to suppress the evidence from the metal box as resulting from an unconstitutional search. The court readily concluded that the search of the truck was justified as a search incident to arrest and otherwise,[2] and it asked the parties to focus on the opening of the metal box. The state successfully argued that opening the metal box was permissible as a search incident to arrest for theft, because items stolen from the donations trailer could be any size, including small enough to fit into the metal box. The court denied the motion to suppress, concluding that it was objectively reasonable for the deputy to believe that the metal box could contain items stolen from the donations trailer, because the deputy "was looking for all sizes of items, big, little, and trinkets and Christmas ornaments, they could be evidence of theft, and it could have been found in the box."

Defendant was convicted of heroin possession.

## ANALYSIS

Article I, section 9, guarantees citizens the right to be free from unreasonable searches. Or Const, Art I, § 9 ("No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure ***."). A warrantless search is presumptively unreasonable, unless it satisfies one of the recognized exceptions to the warrant requirement. *State v. Bridewell*, 306 Or 231, 235, 759 P2d 1054 (1988). It is the state's burden to prove by a preponderance of the evidence that an exception to the warrant requirement applies. *State v. Marshall*, 254 Or App 419, 427, 295 P3d 128 (2013).

A search incident to arrest is a recognized exception to the warrant requirement. *State v. Caraher*, 293 Or

---

[2] As to the search of the truck generally, the trial court also cited the "automobile exception" to the warrant requirement, which has since been abolished. *See State v. McCarthy*, 369 Or 129, 501 P3d 478 (2021). This case is unaffected by that change in the law, however, because the trial court relied solely on the search-incident-to-arrest exception with respect to the opening of the metal box.

741, 743, 653 P2d 942 (1982). However, "under the Oregon Constitution, the fact of arrest does not grant an unqualified right to search an arrestee's person for crime evidence," *State v. Owens*, 302 Or 196, 201, 729 P2d 524 (1986), so certain requirements must be met for the exception to apply. First, the arrest must be lawful, *i.e.*, supported by a valid warrant or probable cause. *Id.* at 203. Second, the purpose of the search must be to protect an officer's safety, to prevent the destruction of evidence, or to discover evidence of the crime of arrest. *State v. Mazzola*, 356 Or 804, 811, 345 P3d 424 (2015). Third, the search must be reasonable in time, scope, and intensity. *State v. Gordon*, 71 Or App 321, 326, 692 P2d 618 (1984), *rev den*, 298 Or 705 (1985). As to scope and intensity, the search must be limited to "areas where the 'instrumentalities' or 'fruits' of the crime could *reasonably* be concealed, not just could *possibly* be concealed." *State v. Ramirez*, 305 Or App 195, 215, 468 P3d 1006 (2020) (emphases in original). Closed containers may be opened and searched when "found on or immediately associated with the arrestee, but only when it is reasonable to believe that evidence of a crime for which the person was arrested could be concealed there." *Owens*, 302 Or at 202. "The test is the reasonableness of the search in light of the circumstances of the particular case." *Id*.

Defendant does not contest that probable cause existed to arrest her for the crime of theft. *See id.* at 204 (probable cause exists when an officer subjectively believes that a crime has been committed and that belief is objectively reasonable under the circumstances). Nor does she contest that the purpose of the deputy's search was to look for evidence of theft. Rather, her argument is directed to the scope and intensity of the search, which she contends was unreasonable under the circumstances. Defendant points to the absence of evidence that stolen items were placed in the cab, the absence of evidence that the metal box "would contain evidence of theft," and the deputy's lack of information as to "the particular items, sizes of items, or types of items that were stolen." In short, defendant argues that the fact that potentially anything could have been stolen from the donations trailer did not justify a search of everything in her possession.

The state responds that it was reasonable for the deputy to believe that stolen items could be concealed inside the metal box. The state argues that there was no way to tell what had been taken from the donations trailer and that the general nature of Salvation Army donations meant that virtually anything in the truck could have been stolen, including very small items that would fit in the metal box.

Whether a search incident to arrest is reasonable in scope and intensity is a fact-bound inquiry, dependent on the circumstances of the individual case. *Id.* at 202. In many cases in which an officer has been held to have lawfully opened a closed container during a search incident to arrest, there was a situation-specific reason to believe that a fruit or instrumentality of the crime existed and could be concealed in that specific container. For example, in *Owens*, it was reasonable to search the defendant's purse incident to her arrest for theft, where she had been seen taking small items off the shelves in a drug store and placing them in her purse. *Id.* at 198, 202. In *State v. Scott*, 317 Or App 777, 784, 505 P3d 1007 (2022), it was reasonable to search the defendant's purse incident to her arrest for theft, where she had been seen stealing items from a Home Depot, the purse was large enough to hold items sold at Home Depot, the purse was by her feet on the floorboard with a new and unopened power tool next to it, and a box was visible inside the purse. In *State v. Hartley*, 96 Or App 722, 726, 773 P2d 1356, *rev den*, 308 Or 331 (1989), it was reasonable to search the defendant's car trunk incident to his arrest for pointing a firearm at another, where the police received a report of a man pointing a gun at people in a parking lot, officers saw the defendant closing his trunk when they arrived, and witness indicated that the defendant had put the gun in his trunk. In *State v. Clew*, 187 Or App 322, 328-29, 67 P3d 420 (2003), it was reasonable to search the defendant's backpack incident to his arrest for possession of marijuana, where the backpack was next to his seat and had "a strong odor of marijuana emanating from it."

There are also search-incident-to-arrest cases, however, in which we have approved of the search of a closed container because it was reasonable to believe more generally that a fruit or instrumentality of the crime could exist and

could be concealed in that type of container. As we said in *State v. Burgholzer*, 185 Or App 254, 258, 59 P3d 582 (2002), an officer need not have probable cause to open a particular container; rather, "once an officer has probable cause to support the arrest, the proper inquiry is the reasonableness of the time, scope, and intensity of the search for evidence of the crime for which the defendant is being arrested." And, again, what is reasonable is a fact-dependent inquiry that turns on the totality of the circumstances. *Owens*, 302 Or at 202.

In *Burgholzer*, 185 Or App at 260-61, we held that it was reasonable to search a cigarette pack found next to the defendant, incident to his arrest for driving under the influence of a controlled substance, where the arresting officer testified to having found controlled substances in cigarette packs "hundreds of times." In *Ramirez*, 305 Or App at 218, it was reasonable to search an Altoids tin found inside a nylon bag inside the defendant's backpack, incident to his arrest for giving false information to a police officer, where the officer was looking for defendant's identification (which would be evidence of that crime) and testified to having previously found identification in "Altoids tins or other containers the size and shape of an Altoids tin." By contrast, in *State v. Martin*, 124 Or App 459, 465, 863 P2d 1276 (1993), it was unreasonable to search a Dristan tin found on the defendant's person, incident to his arrest for driving under the influence of alcohol, where the tin "could not reasonably be expected to contain evidence of [that crime]."

The case that is perhaps the closest to this one is *State v. Curtis*, 307 Or App 297, 475 P3d 942 (2020). In *Curtis*, the defendant was arrested for criminal trespass into a vehicle, after he was found sleeping in a truck that was not his and that he did not have permission to enter. *Id*. at 298. At the time of his arrest, the defendant was carrying on his person a box that was the size and shape of a sunglasses case. *Id*. We held that it was reasonable to search the box incident to arrest. *Id*. at 300. It was uncertain whether the truck's door had been unlocked (as the owner acknowledged was possible) or whether the defendant had used tools to break into the truck, and the arresting officer described "a type of modified key" that could be used to break into a

vehicle. *Id.* Under the circumstances, it was reasonable to believe that the defendant could have that type of tool and that, if he did, "the box, given its size and shape, could contain such tools." *Id.*

The search of the metal box in this case was reasonable for similar reasons. The search was conducted incident to defendant's arrest for theft. The metal box was in close proximity to where defendant was sitting or standing when the deputy arrived, and she does not contend otherwise. It was uncertain whether defendant and Douglas had placed stolen items in the cab, but it was reasonable to believe that they could have. By the time that the deputy arrived, they had been at the location for more than 20 minutes, and there were bags "stacked" behind the driver's and passenger's seats and "[b]ackpacks and random items" inside the cab. Further, it was reasonable to believe that, if the cab did contain stolen items, some items could be small enough to fit into the metal box, given not only the general nature of Salvation Army donations but also the deputy's testimony that he saw defendant and Douglas take items of "various sizes" from the truck bed back to the donations trailer.

On the whole, given the totality of the circumstances, it was reasonable for the deputy to believe that stolen goods could be concealed in the metal box found in the cab. *See Owens*, 302 Or at 202 (allowing for the search of a closed container "found on or immediately associated with the arrestee" if, under the circumstances of the particular case, "it is reasonable to believe that evidence of a crime for which the person was arrested could be concealed there"). The facts of this case are somewhat unusual, particularly with respect to the unknown nature of the stolen items, and it presents a close question. We also do not mean to suggest, even in these unusual circumstances, that the deputy could search literally anywhere in the truck, no matter how inaccessible or unlikely to contain stolen items. *See Ramirez*, 305 Or App at 215 (a reasonable search is limited to "areas where the 'instrumentalities' or 'fruits' of the crime could *reasonably* be concealed, not just could *possibly* be concealed" (emphases in original)). We address only the metal box, which, on these particular facts, it was reasonable to

search. The trial court did not err in denying defendant's motion to suppress.

Affirmed.